No. 13-1876

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CLIFFORD CHARLES TYLER

    Plaintiff – Appellant

v.

HILLSDALE COUNTY SHERIFF'S DEPARTMENT, named as Hillsdale County Sheriff's Office; STAN W. BURCHARDT, individually and as Sheriff of Hillsdale County, Michigan; ERIC H. HOLDER, JR, individually and as Attorney General of the United States; UNITED STATES DEPARTMENT OF JUSTICE; BUREAU OF ALCOHOL, TOBACCO, FIREARMS AND EXPLOSIVES; B. TODD JONES, individually and as Acting Director of The U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; THOMAS E. BRANDON, individually and as Deputy Director of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives; FEDERAL BUREAU OF INVESTIGATION; ROBERT S. MUELLER, III, individually and as Director of the Federal Bureau of Investigation; UNITED STATES OF AMERICA,

    Defendants – Appellees

and

KRISTE KIBBEY ETUE, individually and as Director of the Michigan State Police; RICK SNYDER, individually and as Governor of the State of Michigan,

    Defendants.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

### APPELLANT'S REPLY BRIEF

                                            Lucas J. McCarthy
                                            233 Fulton St. E., Ste. 101
                                            Grand Rapid, MI 49503
                                            (616) 965-1088
                                            Counsel for Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………………………………………....i

TABLE OF AUTHORITIES……………………………………………………..ii

ARGUMENT………………………………………………………………….....1

    I.    This Court Must Accept as True that Mr. Tyler is Mentally Stable, Because That Allegation Is A Factual Claim, Not A Legal One.………..1

    II.    The Cases the Federal Defendants Cite Are Not on Point………………………………………………………………….5

    III.    The Federal Defendants Exaggerate the Difficulty of Appellant's Requested Review……………………………………………………..8

CONCLUSION………………………………………………………………...11

CERTIFICATE OF COMPLIANCE…………………………………………...12

CERTIFICATE OF SERVICE……………………………………………………13

# TABLE OF AUTHORITIES

Statutes and Regulations

18 U.S.C. § 922(g)(4)……………………………………………………...3, 5-10

Court Rules

Fed. R. Civ. P. 12(b)(6)……………………………………………………..2-4

Cases

*Hill v. Blue Cross and Blue Shield of Michigan,* 409 F.3d 710 (6th Cir. 2005)……………………………………………………………………………..2

*Petramala v. U.S. Dep't of Justice*, 481 Fed. Appx. 395 (9th Cir. 2012)………..5, 6

Order at 3, *Petramala v. U.S. Dep't of Justice*, No. CV 10-2002-PHX-FJM (D. AZ. September 2, 2011)……………………………………………………………6

*Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673 (6th Cir. 2011)………2-3

*United States v. McRobie*, No. 08-4632, 2009 WL 82715 (4th Cir. Jan. 14, 2009)…………………………………………………………………………..5, 6

*United States v. Rehlander*, 666 F.3d 45 (1st Cir. 2012)…………………….....5, 7

Other

Complaint, *Petramala v. U.S. Dep't of Justice*, No. CV 10-2002-PHX-FJM (D. AZ. filed September 17, 2010)……………………………..…………………………….5,6

No. 13-1876

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

CLIFFORD CHARLES TYLER

    Plaintiff – Appellant

v.

HILLSDALE COUNTY SHERIFF'S DE et al,

    Defendants – Appellees

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

### APPELLANT'S REPLY BRIEF

### ARGUMENT

Most of the concerns the Federal Defendants raise have already been addressed in Appellant's initial brief. However, three matters warrant a response. First, the Federal Defendants are incorrect in their claim that this Court needs not accept as true Mr. Tyler's allegations that he presents no risk to himself or others. Second, the Defendants over rely on cases that do not address the issues at hand. Third, the Defendants exaggerate the scope and difficulty of Mr. Tyler's request.

## I. This Court Must Accept as True that Mr. Tyler is Mentally Stable, Because That Allegation Is A Factual Claim, Not A Legal One.

This Court must accept as true Plaintiff's claims that he "is not a risk to himself or to other people" and that he presents "no evidence of mental illness." Complaint, RE 1, Page ID # 6; Exhibits, RE 1-1, Page ID #20. When considering a Rule 12(b)(6) motion, the trial court must accept as true all factual allegations in Mr. Tyler's complaint. *Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005). Hence, the case before this Court is not about a mentally ill individual. Rather, this case is about a mentally stable individual—one who Counsel wishes to persuade this Court is unconstitutionally subject to an over-inclusive firearm prohibition because he has been provided no means of relief.

The Federal Defendants argue, however, that this Court needs not accept as true his allegations that he is mentally stable. Fed. Appellees Br. 35-36. They argue that such allegations are merely legal conclusions couched as factual allegations. Fed. Appellees Br. 36 n.11. Therefore, they argue, this Court need not accept the truth of such allegations. Fed. Appellees Br. 36 n.11 (citing *Rondigo, L.L.C. v. Township of Richmond*, 641 F.3d 673, 684 (6th Cir. 2011)). In *Rondigo*, however, the plaintiffs had merely made various allegations about unlawful discrimination by government officials while providing little factual support. *Rondigo*, 641 F.3d at 583. Certainly, an insistence that the ultimate legal determination that

2

discrimination occurred, without factual support, need not be accepted as true in a review of a Rule 12(b)(6) motion.

However, Mr. Tyler is not arguing that because this is a 12(b)(6) review, this Court must accept as true the ultimate legal conclusion asserted here: that Section 922(g)(4) is unconstitutional as applied if Mr. Tyler is afforded no means of review. Instead, Mr. Tyler contends that this Court must accept as true the factual allegation that he does not suffer from mental illness. Whether Mr. Tyler is or is not mentally ill is clearly a question of fact regarding the state of his mental stability. Mr. Tyler's actual mental state cannot be determined solely by looking to the law. Such a determination does not require legal research; it requires an evaluation by a mental health professional after examining and testing Mr. Tyler directly.

Furthermore, Mr. Tyler supported his factual assertions, unlike the plaintiff in *Rondigo*, by obtaining two expert opinions. Exhibits, RE 1-1, Page ID #20, 24. A licensed psychologist found "no evidence of mental illness." Exhibits, RE 1-1, Page ID #20. A substance abuse evaluation found no indications that Mr. Tyler has a substance abuse problem. Exhibits, RE 1-1, Page ID #24. Mr. Tyler's Complaint therefore provides more than a bare bones assertion that he is mentally stable. Mr. Tyler's Complaint supports his assertion with evidence from which his mental stability can be inferred. Therefore, the Federal Defendants are incorrect in

contending that this Court need not accept as true Mr. Tyler's factual allegations about his mental health.

Besides, Mr. Tyler's assertion that he is mentally stable is most likely true, even if this were not a 12(b)(6) review. In addition to the expert evaluations mentioned above finding him mentally stable, Mr. Tyler does not really have a history of mental illness. True, he was committed once in 1986 due to a brief depression. Complaint, RE 1, Page ID # 6. However, what stands out most about Mr. Tyler's history is not his sole commitment; it is his twenty seven years of history afterwards. For twenty-seven years, Mr. Tyler has not been convicted of a crime, accused of presenting a risk to himself or others, afflicted by a mental disturbance, abused drugs or alcohol, or required mental health treatment. For twenty-seven years, Mr. Tyler has been a peaceful, law-abiding member of his community.

It would therefore be misleading to focus on thirty days of commitment as demonstrating a history of mental illness while ignoring twenty-seven years of mental health. Appellant would tend to agree that, depending on the facts, a *repeated* pattern of mental disturbance and treatment throughout one's life could establish a pattern by which a court could infer the expected trajectory of a person's mental illness. Here, however, Mr. Tyler's nearly three decades of mental stability suggests Mr. Tyler has a strong history of mental health, not illness. As

more fully argued in Mr. Tyler's initial brief, a commitment twenty-seven years ago provides virtually no guidance regarding Mr. Tyler's current mental stability. The most pertinent evidence here—his recent evaluations and his life of peaceful cohabitation within his community—strongly support the truth of Mr. Tyler's mental health.

## II.     The Cases the Federal Defendants Cite Are Not on Point.

The Federal Defendants relied on three cases that provide little guidance to this Court's decision here. Because this Court has not previously decided on the issues at hand, the Federal Defendants cited to three cases from other jurisdictions. Fed. Appellees Br. 26 (citing *Petramala v. U.S. Dep't of Justice*, 481 Fed. Appx. 395 (9th Cir. 2012); *United States v. McRobie*, No. 08-4632, 2009 WL 82715 (4th Cir. Jan. 14, 2009; *United States v. Rehlander*, 666 F.3d 45, 48 (1st Cir. 2012)). However, the Defendants' reliance on these cases is clearly misplaced.

*Petramala* is certainly not on all fours with the case at hand. That case involved a plaintiff proceeding pro per on an allegation that being labeled a "mental defective" pursuant to 18 U.S.C. §922(g)(4) violates the Americans with Disabilities Act and the Fifth Amendment because the term has "roots in unconstitutional eugenic theory implicating a non-defective master race." Complaint at 3, *Petramala v. U.S. Dep't of Justice*, No. CV 10-2002-PHX-FJM (D.

AZ. filed September 17, 2010). Furthermore, the plaintiff in that case had been previously found incompetent to manage his own affairs and had been appointed a legal guardian. Order at 3, *Petramala v. U.S. Dep't of Justice*, No. CV 10-2002-PHX-FJM (D. AZ. September 2, 2011). The trial court therefore rightfully dismissed the complaint because that plaintiff failed to properly support his argument and because he was undeniably incompetent to manage his own affairs.

Using *Petramala* as precedent here would clearly be ill-advised since that case was not marked for publication and involved strange pleadings by a mentally incompetent person proceeding without an attorney. In this case, Mr. Tyler has no desire to raise the bizarre claims alleged in *Petramala*. Furthermore, Mr. Tyler is not incompetent to manage his own affairs, and he does not have a legal guardian. Other than both *Petramala* and this case involving Section 922(g)(4), the two cases are completely dissimilar.

*McRobie* is also dissimilar to the case at hand, as that case involved someone attempting to challenge their criminal conviction for possession of a firearm in violation of Section 922(g)(4). *United States v. McRobie*, No. 08-4632, 2009 WL 82715 (4th Cir. Jan. 14, 2009). Here, Mr. Tyler is not challenging such a conviction and would agree that until Section 922(g)(4) is deemed to not apply to him, he is lawfully prohibited from possessing a firearm. Appellant further agrees that McRobie's conviction would have been constitutional, as his status at the time

6

of possession would have been that he was under a Section 922(g)(4) firearm prohibition. Here, Appellant merely seeks a review of his status given his twenty-seven years of mental stability so that he can obtain a determination that Section 922(g)(4) no longer applies to him.

*Rehlander* does not provide any guidance either, because that case involved a determination of when a commitment sufficient for Section 922(g)(4) had occurred. *United States v. Rehlander*, 666 F.3d 45, 48 (1st Cir. 2012). Here, Mr. Tyler does not contest the lawfulness or sufficiently of the legal proceedings that resulted in his commitment. He also does not contest his initial firearm prohibition under Section 922(g)(4) following such legal proceedings. Mr. Tyler's claim here is an exceedingly narrow one: given that this Court must accept as true that he presents no special risk of harm to himself or others, he ought to be permitted a review to determine if Section 922(g)(4) is unconstitutional as applied to him considering his nearly three decades of mental health.

Given the particular facts of this case, the relevance of any of the cases the Defendants cited is doubtful. In fact, Counsel has been unable to find any case with similar facts to the one at hand. Indeed, this appears to be the first time an appellate court has been asked to consider this issue: whether Section 922(g)(4) is unconstitutional when applied to an individual posing no risk of harm and not

challenging a firearm possession conviction who requests a review of his status after almost thirty years of mental stability.

## III. The Federal Defendants Exaggerate the Difficulty of Appellant's Requested Review.

The Federal Defendant's exaggerate the difficulty of Mr. Tyler's requested review by ignoring the narrow scope of any resulting relief from Section 922(g)(4). The Defendants highlight the understandable concerns of Congress. Fed. Appellees Br. 12-16. However, Mr. Tyler does not contest Congress's laudable goal in enacting Section 922(g)(4) to reduce possession of firearms by the mentally ill. Where the Defendants' argument fails is in demonstrating how applying a Section 922(g)(4) firearm prohibition to a mentally stable person is substantially related to reducing possession by the mentally ill.

The Defendants contend that Section 922(g)(4) is substantially related to the Government's interests because of the difficulties of determining with certainty that someone presents no risk of harm to himself or others. Fed. Appellees Br. 37-40. Mr. Tyler does agree that such a determination about his current mental state would be impossibly difficult to make when only considering his situation twenty-seven years ago. However, it is certainly possible for a trained mental health expert to make a determination on whether he is currently mentally ill based on current

evidence. Such an expert has already done so. Exhibits, RE 1-1, Page ID #20. If a determination regarding Mr. Tyler's mental stability could be made in 1986, it should be able to be made now.

The truth is that *any* individual in possession of a firearm poses at least some risk of future firearm violence. We cannot conclusively know with certainty the actions of *anyone* before they happen. Hence, if we followed the Federal Defendant's arguments to their logical conclusion, disarming the entire public is substantially related to the Government's important interest in preventing firearm violence. Without disarming the public, there is no way of preventing with any certainty future firearm violence. Yet firearm possession by the general public is not only permitted, it is constitutionally protected. We live in a nation that protects some level of risk; the question is whether someone presents a *heightened* level of risk beyond that already presented by the general public.

At the very least, if Mr. Tyler were to convince a trial court by clear and convincing evidence that he does not suffer from any mental illness or pose any risk beyond that already posed by the general public, continuing his firearm prohibition would be unwarranted. Section 922(g)(4) as applied to Mr. Tyler would not then be preventing firearm violence any more than it would if applied to any other mentally stable individual. Allowing Mr. Tyler to bear the burden of such a demonstration does not prevent Section 922(g)(4) from continuing to trigger a

firearm prohibition upon the occurrence of an involuntary commitment. Allowing Mr. Tyler to bear that burden does not negate the continuing firearm prohibition until a court has determined that Section 922(g)(4) is unconstitutional as applied. Allowing Mr. Tyler to bear that burden means that if the Federal Government is right—that whether he is a danger cannot be determined—then Mr. Tyler would remain subject to a firearm prohibition. Hence, the statute would continue to serve the Government's interests if Mr. Tyler were permitted a review. If Mr. Tyler actually bears his burden, and a trial court becomes convinced he poses no special risk of harm, what possible governmental interest is furthered by continuing Section 922(g)(4)'s firearm prohibition when Mr. Tyler poses no special risk?

Of course, it would certainly be irresponsible to fail to recognize the dangers of firearms in the hands of individuals intent on harm. The Government's commitment to protecting the public is commendable. However, in our zest to protect, sometimes good people can be lumped in with the bad. Given the uncertainties and the magnitude of the task, doing so initially may be a necessary evil that furthers an important government interest.

Yet the necessity of that evil does not continue to hold when one of those responsible individuals subsequently bears the appropriate evidentiary burden and demonstrates convincingly that he presents no special risk or harm. At that point, prohibiting the exercise of constitutional rights by such an individual furthers no

important government interest. Recognizing that Section 922(g)(4) furthers no important government interest when applied to such an individual—when that decision is limited to the facts of that individual case—does nothing to hamper the Government's efforts to prevent firearm violence by those people who *do* pose a legitimate threat.

Appellant is merely requesting a narrow ruling here: one fully supporting the Government's interest in preventing firearm violence, but recognizing that such an interest ends at individuals who pose no special risk of harm.

## CONCLUSION

For the reasons stated above and in Appellant's initial brief, this Court must reverse in part the district court's January 29, 2013 opinion and order to the extent the district court found that Appellant failed to state a claim under the Second Amendment. Likewise, this Court must vacate the district court's June 21, 2013 order to the extent it relies on the reasoning and findings of the January 29, 2013 opinion and order. The case must then be remanded for further proceedings consistent with this Court's opinion.

Executed on December 6, 2013.

**/s/ Lucas J. McCarthy**
Lucas J. McCarthy
Hartwell Failey & McCarthy PLC
233 Fulton St. E., Ste. 101
Grand Rapids, MI 49503

(616) 965-1088
luke@hfmlaw.com

Attorney for Appellant Clifford Tyler

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) because this brief contains 2,448 words, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii) and 6th Cir. R. 28(b).

This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.

Executed on December 6, 2013.

**/s/** Lucas J. McCarthy
Lucas J. McCarthy
Hartwell Failey & McCarthy PLC
233 Fulton St. E., Ste. 101
Grand Rapids, MI 49503
(616) 965-1088
luke@hfmlaw.com

Attorney for Appellant Clifford Tyler

## CERTIFICATE OF SERVICE

I hereby certify that on December 6, 2013, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record.


**/s/** Lucas J. McCarthy
Lucas J. McCarthy
Hartwell Failey & McCarthy PLC
233 Fulton St. E., Ste. 101
Grand Rapids, MI 49503
(616) 965-1088
luke@hfmlaw.com

Attorney for Appellant Clifford Tyler