No. 13-1876

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

CLIFFORD CHARLES TYLER

    Plaintiff – Appellant

v.

HILLSDALE COUNTY SHERIFF'S DEPARTMENT, et al,

    Defendants – Appellees

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

## RESPONSE TO PETITION FOR REHEARING AND
## REHEARING EN BANC

Lucas J. McCarthy
3712 Groveland Ave. SW
Wyoming, MI 49519
(989) 327-0876
Counsel for Appellant

# ARGUMENT

The government's petition should be denied. Under Rule 35 of the Federal Rules of Appellate Procedure, a rehearing en banc is only appropriate to ensure uniformity of the Court's decisions or because the matter "involves a question of exceptional importance." Under the Sixth Circuit's procedural rules, the federal rule has been clarified as being "an extraordinary procedure" to address "a precedent-setting error of exceptional public importance or an opinion that directly conflicts with Supreme Court or Sixth Circuit precedent." 6 Cir. I.O.P. 35. Furthermore a rehearing en banc is not intended for consideration of "errors in the application of correct precedent to the facts of the case. *Id.*

Here, the government bases its petition on two principle arguments: the panel majority (1) discounted the *Heller* dicta about the mentally ill as irrelevant and (2) failed to apply intermediate scrutiny, in apparent contradiction to the other appellate courts to consider the issue at hand. Petition, RE 47, Page ID #7, 9. The remainder of the government's petition is an argument about the application of the law to the facts of this case, which is not a matter for a rehearing en banc. Since, despite the government's arguments, no error or conflict of the sort contemplated for a rehearing en banc has occurred, such a rehearing is unwarranted.

### *Heller* Dicta

The government's arguments about the panel's error in relation to *Heller* are meritless. The government argues that the panel failed to "accord proper significance to *Heller's* statement that prohibitions on the mentally ill are 'presumptively lawful.'" Petition, RE 47, Page ID #8. However, the panel did indeed find *Heller's* statement relevant and significant. The panel discussed *Heller* at great length throughout its opinion. The difficulty of the *Heller* statement is not one of whether to afford the statement significance, relevance, or weight. The difficulty is determining how the statement affects the case at hand, which is not about a mentally ill person.

Mr. Tyler has nearly three decades of mental health and of law-abiding, peaceful, drug-free life within his community. Opinion, RE 43, Page ID #5-6. A recent psychological evaluation and a recent substance-abuse evaluation found no indication of mental illness or substance abuse. Opinion, RE 43, Page ID #6. Due to the procedural position of this case after the trial court granted the federal defendant's motion to dismiss for failure to state a cause of action, this Court must assume Mr. Tyler is as mentally healthy as he and his doctors say he is. *See Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005). Given that Mr. Tyler is not mentally ill, the panel rightfully noted that *Heller*'s statement about the mentally ill "is insufficient—by itself—to support the restriction as to

individuals who have been involuntarily committed at some time in the past." Opinion, RE 43, Page ID #10.

The panel correctly noted that §922(g)(4) implicates two (possibly overlapping) groups: individuals who are mentally ill and individuals who have previously been "'committed to a mental institution.'" Opinion, RE 43, Page ID #10 (quoting 11 USC §922(g)(4)). The government's argument about *Heller* requires a deliberate conflation of these two groups that the language of the statute and simple common sense suggest are separate. Furthermore, the government has wholly failed to support its position with any scientific evidence demonstrating that an involuntary commitment almost thirty years ago indicates someone is mentally ill today. Because the *Heller* statement refers to one group (the mentally ill) but not the other group (which includes people facing short-lived depressive episodes decades ago), the panel rightfully could not find *Heller* determinative on its own. Therefore, the panel's decision is not in conflict with Supreme Court precedent or in error due to *Heller*, because the Supreme Court has not addressed the matter at hand.

Indeed, the *Heller* court made little investigation into the issues presented here. Section 922(g)(4) was certainly beyond the scope of the Supreme Court's attention. Unquestionably, the Supreme Court's guidance to lower courts must be heeded. However, the government's arguments distort *Heller* into providing

determinative guidance far beyond anything a fair reading of the opinion could provide. To argue that the *Heller* court intended to provide guidance on the constitutionality of a permanent federal ban on firearm possession by the mentally healthy—only reviewable by residents of some states, but not others—is absurd. The *Heller* court never considered the issues presented in the case at hand. The government's argument about the panel's supposed error in relation to *Heller* distorts the extent of *Heller's* scope while simultaneously conflating a group *Heller* implicated with a group *Heller* did not. The panel's nuanced opinion addresses these considerations. The government's petition does not, and its requested relief should therefore be denied.

**Consideration of Other Circuits**

The government also argues that the panel erred by "ignoring the fact that every other court of appeals to consider a Second Amendment challenge to a § 922(g) prohibition applied intermediate scrutiny." Petition, RE 47, Page ID #9. The government's statement is wholly untrue. The panel spent considerable effort surveying the decisions of other circuits. Opinion, RE 43, Page ID #19-22. The government's claim of error seems to suggest that the Sixth Circuit is bound by the decisions of other circuit courts and absolved of the duty of considering the issue itself. Instead, the panel correctly considered the decisions of other circuits, noted

that the Sixth Circuit "is one of the few that has not entered this debate," and then proceeded to make a determination on the issue. Opinion, RE 43, Page ID #22.

The government's claim of error here amounts to mere desire for the panel to have settled on intermediate scrutiny like the other circuits and not to a demonstration of error in the panel's understanding of the available precedents. As the panel correctly noted, '[t]his case presents an important issue of first impression…." Opinion, RE 43, Page ID #2. Because the panel did consider the decisions of other circuits but also met the Sixth Circuit's own duty to consider the issue itself, the panel was not in error for "ignoring" the decisions of other circuits. Moreover, the panel's decision is not in conflict with any Supreme Court or Sixth Circuit precedent. Consequently, a rehearing en banc is unwarranted, and the government's requested relief should be denied.

**Strict Versus Intermediate Scrutiny**

Furthermore, the panel's determination that strict scrutiny, rather than intermediate scrutiny, is appropriate here was no doubt correct. As the panel noted, "the Supreme Court has suggested there is a *presumption* in favor of strict scrutiny when a fundamental right is involved." Opinion, RE 43, Page ID #23 (citations omitted). "[W]here the Supreme Court favors intermediate scrutiny, the Court has expressly indicated a reason for downgrading from strict scrutiny." Opinion, RE 43, Page ID #24. The panel correctly noted that in regards to the Second

Amendment, the Supreme Court "has strongly indicated that intermediate scrutiny should *not* be employed." Opinion, RE 43, Page ID #24.

Certainly, the *Heller* court seemed clearly skeptical of attempts to apply an interest-balancing test to the Second Amendment:

> We know of no other enumerated constitutional right whose core protection has been subjected to a freestanding "interest-balancing" approach. The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon. A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad…. The Second Amendment is no different. Like the First, it is the very product of an interest-balancing by the people—which [the dissent] would now conduct for them anew. And whatever else it leaves to future evaluation, it surely elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home.
> *District of Columbia v. Heller*, 554 U.S. 570, 634-35 (2008).

Indeed, so strong is the *Heller* language rejecting interest-balancing tests that it would seem to suggest that courts look solely to the existing exceptions present when the Second Amendment was adopted and to require any new exceptions, regardless of the federal government's interests, to be carved out later by constitutional amendments. From this perspective, even strict scrutiny may be an inappropriate interest-balancing test; as the panel noted, strict scrutiny requires that a challenged law "furthers a compelling interest and is narrowly tailored to achieve that interest." Opinion, RE 43, Page ID #28 (citation omitted). However, there is no historical evidence that involuntarily committed individuals were historically excepted from Second Amendment protection; firearm bans for such individuals are modern inventions. Opinion, RE 43, Page ID #15. Faced with *Heller*'s strong language disfavoring interest-balancing, the panel was appropriately wary of downgrading even more to the more lenient interest-balancing of intermediate scrutiny.

The dangers of using intermediate scrutiny are, in fact, on display in the trial court's opinion in this case. In the trial court's opinion, intermediate scrutiny downgraded the issue to being about whether a permanent ban based on an involuntary commitment was "reasonably related to the government's stated interests." District Court Opinion, RE 28, Page ID # 244. At that point in the trial court's decision, it would be difficult to distinguish the trial court's intermediate

scrutiny from rational basis scrutiny, let alone to reconcile it with *Heller*'s explicit distaste for applying interest-balancing tests to the Second Amendment. Adopting strict scrutiny is necessary to guide trial courts against so easily balancing away fundamental rights because of "reasonable" assertions about government interests. Just as *Heller* contemplates, Mr. Tyler is a "law-abiding, responsible citizen" interested in use of "arms in defense of hearth and home." *Heller*, 554 U.S. at 635. The Second Amendment's core protection of this right cannot be subject to as insubstantial a protection as the trial court's use of intermediate scrutiny suggests—not if *Heller*'s warning against interest-balancing is granted the weight it deserves.

## CONCLUSION

The federal government's petition rests on two meritless claims that the panel committed error. First, the government incorrectly claimed that the panel failed to appreciate the significance of *Heller*; actually, *the government* failed to appreciate the significance of the panel's nuanced consideration of *Heller*. *Heller*'s statement about prohibitions on firearm possession by the mentally ill cannot determine a case about a prohibition on firearm possession by the mentally healthy. Second, the government incorrectly claimed that the panel ignored other opinions by other circuits on the choice of the level of scrutiny to provide. However, the panel did consider those other cases but found *Heller*'s explicit distaste for

applying interest-balancing tests to the Second Amendment to be more persuasive. Deciding cases to be consistent with prior Supreme Court opinions cannot be error, even if doing so conflicts with the opinions of other circuits.

Because the government's claims of error are meritless, a rehearing en banc is not warranted. No error has been committed, and the opinion is not in conflict with Supreme Court or Sixth Circuit precedent. The rest of the government's petition amounts to a disagreement with how the appropriate standard was applied to the facts of this case, and such disagreements about application of law to the facts are not the sort contemplated for en banc review. Furthermore, a rehearing by the same panel is unnecessary. The government has raised no issues that have not already been fully and painstakingly addressed in the panel's nuanced and deliberate opinion.

For the reasons stated above, the petition for rehearing should be denied.

Respectfully submitted,

/s/ Lucas J. McCarthy
Lucas J. McCarthy
3712 Groveland Ave. SW
Wyoming, MI 49519
(989) 327-0876
lmccarthy.law@gmail.com

Attorney for Appellant Clifford Tyler

**CERTIFICATE OF SERVICE**

I hereby certify that on March 24, 2015, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record.


<u>/s/ Lucas J. McCarthy</u>
Lucas J. McCarthy
3712 Groveland Ave. SW
Wyoming, MI 49519
(989) 327-0876
lmccarthy.law@gmail.com

Attorney for Appellant Clifford Tyler