No. 13-1876

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

CLIFFORD CHARLES TYLER

       Plaintiff – Appellant

v.

HILLSDALE COUNTY SHERIFF'S DEPARTMENT, et al,

       Defendants – Appellees

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

## APPELLANT'S SUPPLEMENTAL BRIEF

Lucas J. McCarthy
3712 Groveland Ave. SW
Wyoming, MI 49519
(989) 327-0876
Counsel for Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS…………………………………………………………..i

TABLE OF AUTHORITIES……………………………………………………ii

ARGUMENT…………………………………………………………………….1

    I.     THIS COURT SHOULD ADOPT A SLIDING SCALE OF SCRUTINY AND APPLY STRICT SCRUTINY HERE……………………………..1

        A. Strict Scrutiny is Required When a Law Burdens the Second Amendment's Core Protected Activities…………………………...3

        B. Strict Scrutiny is Appropriate Here Because 18 USC §922(g)(4) Completely Prevents Mr. Tyler's Use of Arms for Self-Defense at Home……………………………………………………………….8

    II.    ACCESS TO A REVIEW OF A FEDERAL BAN ON THE EXERCISE OF A FUNDAMENTAL, CONSTITUTIONAL RIGHT SHOULD NOT TURN ON ACCIDENTS OF GEOGRAPHY…………………………..12

CONCLUSION…………………………………………………………...15

CERTIFICATE OF SERVICE…………………………………………………17

# TABLE OF AUTHORITIES

Statutes and Regulations

18 U.S.C. § 922(g)(4)……………………………………………………..*passim*

NICS Improvement Amendments Act of 2007, Pub. L. 110-180, 121 Stat. 2559…………………………………………………...………….……....11-12

MCL 28.422(3)(g)-(h)……………………………………...………………..13-14

Cases

*Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 562-63, 100 S.Ct. 2343 (1980)……………………………….……..2

*Citizens United v. Federal Election Commission*, 558 U.S. 310, 130 S.Ct. 876 (2010)………………………………...…………………………….……………….2

*Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011)………………..…6-7

*District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008)………....3,4-9

*Heller v. District of Columbia (Heller II)*, 670 F.3d 1244 (D.C. Cir. 2011)……..2,5

*Kachalsky v. County of Westchester*, 701 F.3d 81 (2nd Cir. 2012)……………......6

*McDonald v. City of Chicago, Illinois*, ___ U.S. ___, 130 S.Ct. 3020, 3042 (2010).....................................................................................................................8

*National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185 (5th Cir. 2012)……….………………………………….7

*Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 103 S.Ct. 948 (1983)…………..……………………………………………………2

*Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014)……………….…7-8

*United States v. Booker*, 644 F.3d 12 (1st Cir. 2011)……………….………………...6

*United States v. Marzzarella*, 614 F.3d 85 (3rd Cir. 2010)………………...........6

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011)………………...........7

*United States v. Reese*, 627 F.3d 792 (10th Cir. 2010)………………….................6

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010)…………………………….6

Other

1 William Blackstone, *Commentaries*…………………………………………...3

4 William Blackstone, *Commentaries*…………………………………………...4

C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009)……………………………………………………………4

Henry J. Steadman et al., *Violence by People Discharged From Acute Psychiatric Inpatient Facilities and by Others in the Same Neighborhoods*, 55 Archives. Gen. Psychiatry 393, 400 (1998)………………………………….………………….10

## ARGUMENT

For this supplemental brief, two issues may warrant further elaboration. The first issue is whether strict or intermediate scrutiny is the appropriate level of scrutiny in this case. The appropriate level of scrutiny when reviewing a regulation implicating the Second Amendment should depend upon a sliding scale. In this case, strict scrutiny is required. The second issue is whether an individual's access to a review of an 18 U.S.C. §922(g)(4) firearm barn should depend solely upon the state in which one resides. Geography bears no rational relation to firearm regulation but nonetheless determines whether an opportunity for review exists. While a perfect fit between a regulatory scheme and the government's interest is not required, a federally engendered scheme of review for a federal ban on the exercise of a fundamental right should turn on something more substantial than an accident of geography.

I.    THIS COURT SHOULD ADOPT A SLIDING SCALE OF SCRUTINY AND APPLY STRICT SCRUTINY HERE

Because 18 USC §922(g)(4) bars Mr. Tyler's exercise of his Second Amendment right to use arms in self-defense without regard to his present risk of engaging in pernicious activity, it burdens the core of his Second Amendment right to a degree that necessitates strict scrutiny. Like the First Amendment, the applicable level of scrutiny under the Second Amendment should depend upon the

activity being regulated and the degree the law burdens the right to engage in that activity. *Heller v. District of Columbia (Heller II)*, 670 F.3d 1244, 1257 (D.C. Cir. 2011). Such a sliding scale of scrutiny would align Second Amendment jurisprudence with First Amendment jurisprudence, which applies strict scrutiny to regulations of the First Amendment's core protected activities. *E.g. Citizens United v. Federal Election Commission*, 558 U.S. 310, 340, 130 S.Ct. 876 (2010) (noting that strict scrutiny applies to laws burdening political speech). However, intermediate scrutiny is appropriate in the First Amendment context for reviews of content-neutral restrictions on the time, place, and manner of speech that still permit ample alternative modes of communication. *Perry Education Association v. Perry Local Educators' Association*, 460 U.S. 37, 45, 103 S.Ct. 948 (1983). Commercial speech also warrants an intermediate-like level of scrutiny because "[t]he Constitution . . . accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 562-63, 100 S.Ct. 2343 (1980). In the Second Amendment context, strict scrutiny should also be necessary for regulations of the Second Amendment's core protected activities, but intermediate scrutiny would be appropriate for regulations that do not substantially burden the amendment's core activities.

A. Strict Scrutiny is Required When a Law Burdens the Second
   Amendment's Core Protected Activities.

Strict scrutiny is necessary when reviewing regulations burdening the
Second Amendment's core protected activities. While the Second Amendment
protections are not unlimited, its core protection cannot be "subjected to a
freestanding 'interest-balancing' approach." *District of Columbia v. Heller*, 554
U.S. 570, 634, 128 S.Ct. 2783 (2008). Like the First Amendment, the Second
Amendment "is the very product of an interest-balancing by the people." *Id.* at
635. When codified, the Second Amendment was no different in having
understood exceptions than the First Amendment, which guaranteed a freedom of
speech that included "exceptions for obscenity, libel, and disclosure of state
secrets." *Id*. William Blackstone wrote that the right to arms is subject to "gentle,"
"moderate" restraints for acts that "would be pernicious either to ourselves or our
fellow citizens." 1 William Blackstone, Commentaries *140. However, within
these "gentle" constraints for pernicious activities, the core of the right to arms was
"a public allowance . . . of the natural right of resistance and self-preservation." *Id.*
at 139.

Blackstone's examples for what constituted sufficiently "pernicious"
activities to be outside the core of the right to bear arms included breaching the
public peace by terrifying the public—such as by wearing masks while being

armed, hunting armed at night, or appearing in public with unusual or dangerous weapons. 4 William Blackstone, Commentaries *143-44, 148-49. Pernicious activities like terrifying the public by riding armed while wearing masks are outside the core activity of self-preservation that Blackstone saw the right to arms as existing to protect. These "gentle" restraints were "moderate" regulations of the time, place, and manner of exercising the right to arms. Such regulations prohibited terrifying the community by implicating the *present*, imminent threat of violence. "[A]ctual ' longstanding' precedent in America and pre-Founding England suggests that a firearms disability can be consistent with the Second Amendment to the extent that . . . its basis credibly indicates a present danger that one will misuse arms against others and the disability redresses that danger." C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009). These permissible restrictions clearly did not burden the core protection of the right to arms: the use of arms for self-preservation, especially in the privacy of one's own home.

The historically strong protection of the right to arms for self-defense (with moderate regulations for time, place, and manner to prevent certain pernicious evils) suggests a distinction between regulations that burden core protected activities and those that do not. Consistent with Blackstone's writings, the Supreme Court has held that "whatever else [the Second Amendment] leaves to future

evaluation, it surely elevates above *all other interests* the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635 (emphasis added). The *Heller* court clearly views use of arms for self-defense as receiving increased protection under the Second Amendment. Following the Supreme Court's decision in *Heller*, The D.C. Circuit reasoned that "a regulation that imposes a substantial burden upon the core right of self-defense protected by the Second Amendment must have a strong justification, whereas a regulation that imposes a less substantial burden should be proportionately easier to justify." *Heller II*, 670 F.3d at 1257. Such a doctrinal distinction is necessary to be consistent with the historical understanding of the right to bear arms, which prohibited pernicious activity but privileged arms for self-defense.

Regulations that do not burden the Second Amendment's core protections may warrant intermediate scrutiny. For example, the *Heller II* court addressed a registration regulation only incidentally burdensome on firearm possession. *Id.* Based on that distinction, the D.C. Circuit found that the gun registration regulations under consideration warranted an intermediate scrutiny review. *Id.* The gun registration regulations in that case did not warrant strict scrutiny because, unlike the case at hand, they did not threaten a permanent bar on firearm possession for all purposes, including self-defense at home.

Similarly, the Third Circuit has recognized that, like in First Amendment jurisprudence, challenges to regulations affecting enumerated rights may trigger different standards of scrutiny and that intermediate scrutiny is appropriate where "the law does not severely limit the possession of firearms." *United States v. Marzzarella*, 614 F.3d 85, 96-97 (3rd Cir. 2010). The Second Circuit—after comparing the First Amendment scheme of strict scrutiny for regulations affecting the content of noncommercial speech versus intermediate scrutiny for commercial speech—also reasoned that intermediate scrutiny was appropriate when reviewing regulations that do "not burden the 'core' protection of self-defense in the home." *Kachalsky v. County of Westchester*, 701 F.3d 81, 93-94 (2nd Cir. 2012).

The First Circuit applied a version of intermediate scrutiny to a ban on firearm possession by individuals convicted of domestic violence and cited the Seventh Circuits decision in *Skoien* for support. *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011) (citing *United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010)). The Tenth Circuit reached a similar decision regarding individuals who have a record of domestic violence and also cited *Skoien*. *United States v. Reese*, 627 F.3d 792, 801-02 (10th Cir. 2010). However, the Seventh Circuit has stated that the application of intermediate scrutiny in *Skoien* was only appropriate because that case did not implicate a "law-abiding, responsible citizen" *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011) (quoting *Heller*, 554 U.S. at

635). The above cases are all consistent with a distinction in levels of scrutiny depending on whether the core protections of the Second Amendment are affected.

The other circuits to consider this issue have explicitly acknowledged that a level of scrutiny stricter than intermediate scrutiny is necessary when a regulation significantly burdens those activities at the core of the Second Amendment's protection. For example, the Seventh Circuit reasoned that a more "rigorous showing" than intermediate scrutiny was required when reviewing the City of Chicago's complete ban on firing-ranges; a higher level of scrutiny was necessary because the ban encroached on the efforts of responsible, law-abiding individuals to maintain the proficiency needed to possess arms for self-defense. *Ezell*, 651 F.3d at 708. The Fourth Circuit has reasoned that "any law that would burden the "fundamental," core right of self-defense in the home by a law-abiding citizen would be subject to strict scrutiny." *United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011). The Fifth Circuit has likewise recognized that "[a] regulation that threatens a right at the core of the Second Amendment— for example, the right of a law-abiding, responsible adult to possess and use a handgun to defend his or her home and family . . . triggers strict scrutiny." *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives*, 700 F.3d 185, 195 (5th Cir. 2012) (citation omitted). The Ninth Circuit has reasoned that "[i]ntermediate scrutiny is not appropriate . . . for cases involving the destruction

of a right at the core of the Second Amendment." *Peruta v. County of San Diego*, 742 F.3d 1144, 1168 n.15 (9th Cir. 2014). Just as strict scrutiny applies in the First Amendment context to laws burdening political speech, so too should strict scrutiny apply in the Second Amendment context to laws burdening use of arms for self-defense by responsible, law-abiding citizens.

B. Strict Scrutiny is Appropriate Here Because 18 USC §922(g)(4)
   Completely Prevents Mr. Tyler's Use of Arms for Self-Defense at Home.

None of the regulations that other circuits have reviewed under the intermediate scrutiny approach the level of burdening of a law-abiding, responsible individual's core Second Amendment protections like the case at hand. 11 U.S.C. §922(g)(4) necessarily burdens the core protection of Mr. Tyler's Second Amendment right because it makes his use of a firearm for self-defense, including in his home, impossible. The Second Amendment right to keep and bear arms is "among those fundamental rights necessary to our system of ordered liberty." *McDonald v. City of Chicago, Illinois*, ___ U.S. ___, 130 S.Ct. 3020, 3042 (2010). The Seconds Amendment's core protection is self-defense. *Heller*, 554 U.S. at 628, 630. Because of "the need for defense of self, family, and property is most acute" in the home, the Second Amendment "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id.* at 628, 635. Consequently, the Supreme Court has found that a D.C. regulation that

made "it impossible for citizens to use [firearms] for the core lawful purpose of self-defense" to be unconstitutional. *Id.* 630. In the case at hand, Mr. Tyler is forever banned from possessing or owning a firearm, which precludes his use of a firearm for self-defense, even in the privacy of his home.

Furthermore, Mr. Tyler is the sort of responsible, law-abiding citizen that Blackstone and the Supreme Court have recognized the right to arms as protecting. Notwithstanding that nearly three decades ago, people feared he might temporarily pose a danger to himself, Mr. Tyler has no history of *actual* violence against himself or others. Exhibits, RE 1-1, Page ID # 20. He has had a nearly thirty-year history of mental health since his commitment, he has never been convicted of a crime, and he does not have any substance abuse issues. Complaint, RE 1, Page ID # 3; Exhibits, RE 1-1, Page ID # 16-17, 19-20. No other circuit has been presented with a complete ban on the amendment's core protected activity for an individual who has no history of violence, no criminal records, no substance abuse problems, and no heightened risk of pernicious activity. Because Mr. Tyler is a law-abiding, responsible individual barred from using a firearm for self-defense, the core of his Second Amendment protections have been substantially burdened.

Of course, the Federal Government has attempted to conflate individuals who have been previously committed with the mentally ill in order to suggest that Mr. Tyler poses a present risk of danger to himself or others. However, the

Government has thus far been unable to furnish a single study demonstrating a predilection for violence by individuals such as Mr. Tyler—individuals without criminal records, without a continuing record of mental instability, and without substance abuse issues—who have been peacefully living within their communities decades after an involuntary commitment. Previously committed individuals cannot be treated as a homogenous class when predicting outcomes. Henry J. Steadman et al., *Violence by People Discharged From Acute Psychiatric Inpatient Facilities and by Others in the Same Neighborhoods*, 55 Archives. Gen. Psychiatry 393, 400 (1998). The prevalence of violence among such individuals without a substance abuse problem is the same as among other people without mental illness. *Id.*

This finding is not surprising, since people who have been involuntarily committed do not necessarily suffer thereafter from a lifetime of mental illness. Instead, like Mr. Tyler, individuals may suffer "a brief reactive episode in response to" temporarily overwhelming events in their lives. *See* Exhibits, RE 1-1, Page ID # 20. It is absurd to argue that an individual who temporarily needs special support and supervision because of an emotional event—such as the death of a child or spouse, a return from active military duty, the loss of a job, or a divorce—are forever thereafter functionally equivalent to violent psychopaths. A reasoned, careful (and caring) consideration can certainly differentiate between two related

but distinct classes: those who have been previously committed and those who are mentally ill.

Indeed, by permitting ATF-approved state relief from disability programs, the Federal Government necessarily agrees that these two classes can be differentiated. *See* NICS Improvement Amendments Act of 2007 (NIAA), Pub. L. 110-180, 121 Stat. 2559, 2569-70. Under the NIAA, the states may elect to provide an ATF-approved program to review individuals prevented from possessing a firearm due to a previous commitment. *Id.* The entire point of such programs are to identify individuals like Mr. Tyler who may permitted to possess a firearm despite a prior commitment because they are not mentally ill and pose no present, heightened risk of pernicious activity. Through the NIAA, Congress has recognized the distinction between those who are presently mentally ill and those who were previously committed.

Therefore, because §922(g)(4) potentially affects law-abiding, responsible, mentally healthy, nonviolent individuals like Mr. Tyler to a degree that makes engagement in the Second Amendment's core protected activities of self-defense in the home impossible, strict scrutiny is required here. In this case should Mr. Tyler be permitted to convince the trial court of his mental health, continuing to ban his possession of a firearm would not survive a strict scrutiny review. Keeping firearms away from the mentally heathy does not further the government's interest

in keeping firearms away from the mentally ill. Indeed, under any level of scrutiny, completely preventing law-abiding, responsible individuals from having a firearm for self-defense in the home violates the Second Amendment.

II.    Access to a Review of a Federal Ban on the Exercise of a Fundamental, Constitutional Right Should Not Turn on Accidents of Geography

The federal system has engendered a patchwork review system where some states have an ATF approved review program while others do not. If this Court upholds the trial court's decision, the only means for an individual to obtain a review of an 18 U.S.C. §922(g)(4) ban would be pursuant to the NIAA. However, only a few states have enacted such a program. In the Sixth Circuit, only Kentucky permits such an ATF-approved review. Exhibits, RE 1-2, Page ID # 39-40. Hence, §922(g)(4) operates as a reviewable and possibly temporary prohibition on firearm possession in states like Kentucky, but as a non-reviewable, permanent ban in states like Michigan, Ohio, and Tennessee.

To the extent the federal government argues that Mr. Tyler's commitment decades ago necessarily demonstrates he poses a present risk of harm or places him in a category that ought not to be permitted a review, the Government must address why the same is not true of residents of Kentucky. After all, as argued above, the NIAA is a congressional recognition that not everyone who has been previously committed is mentally ill or a threat to themselves or others. The reason for

preventing Mr. Tyler a review on his firearm ban cannot be the fact of his commitment alone. A Kentucky resident with an identical background of involuntary commitment may have lawfully regained possession of firearms years ago.

Instead, Mr. Tyler's continuing ban on engaging in the activities at the core of the Second Amendment's protections turns upon the accident of his location and a fractious political environment beyond his control. The federal government may argue that the decision on whether to create a review program rests on the states; however, the federal government is the entity that defined both the ban and the only permissible relief from that ban. The federal government has engendered a system where a federal ban on the exercise of a fundamental constitutional right unequally burdens the residents of some states more than others. That unequal treatment has no rationale other than as a product of inconsistent political ideologies working across the political branches of both federal and state governments.

That Michigan has not enacted an ATF-approved program cannot be assumed to indicate the state's preference on the matter either. The federal §922(g)(4) bar is more severe than the state's similar, state law bar for individuals who have previously been committed. Michigan law prohibits an individual from acquiring a firearm if "[t]he person is . . . under an order of involuntary

commitment in an inpatient or outpatient setting due to mental illness." MCL 28.422(3)(g). Michigan law does not prevent an individual like Mr. Tyler, who has not been under such an order in either an inpatient or outpatient setting for almost thirty years, from obtaining a firearm. Furthermore, if needed, Michigan law certainly recognizes that individuals may be afforded a review. *E.g.,* MCL 28.422(3)(f),(h) (permitting firearm licenses to individuals who have had their legal capacity restored by court order or had their sanity adjudged restored). The federal ban that has been imposed on Michigan is wholly inconsistent with the state's own laws regarding individuals like Mr. Tyler.

While the federal government does not need to create a perfect fit between the law and the interest it furthers, the existence or nonexistence of an opportunity for review—a crucial issue for a federal scheme regulating a fundamental right— should turn on more substantial reasons than the accident of the state in which a citizen resides. Yet the accident of Mr. Tyler's geography is the primary impetus for this case existing. Mr. Tyler is merely requesting to have an opportunity for review, which the federal government recognizes as permissible and possible in states beside the one in which Mr. Tyler just happens to reside. The State of Michigan also recognizes that individuals like Mr. Tyler may not present a risk necessitating disarmament or preventing a review of his situation. However, the federal government has not approved Michigan's review procedures for purposes

of Mr. Tyler's federal firearm ban. As a consequence, the federal government is asking this Court to approve a federal regulatory scheme forever and completely prohibiting Mr. Tyler's exercise of a fundamental right—without a review—solely because of the accident of where his commitment occurred. The citizens of Michigan are no less capable of recovery than the citizens of Kentucky and no less worthy of a review.

## CONCLUSION

For the reasons stated above, the original panel's opinion reversing the trial court's decision should be reinstated. While intermediate scrutiny may be appropriate for other cases, the appropriate level of scrutiny depends upon the degree that a regulation burdens the core of the Second Amendment and strict scrutiny is required here. Furthermore, Reviews of bans on the exercise of fundamental rights should depend upon something more substantial than accidents of geography.

Therefore, this Court must reverse in part the district court's January 29, 2013 opinion and order to the extent the district court found that Appellant failed to state a claim under the Second Amendment. Likewise, this Court must vacate the district court's June 21, 2013 order to the extent it relies on the reasoning and findings of the January 29, 2013 opinion and order. The case must then be remanded for further proceedings consistent with this Court's opinion.

For the reasons stated above, the petition for rehearing should be denied.

Respectfully submitted,

<u>/s/ Lucas J. McCarthy</u>
Lucas J. McCarthy
3712 Groveland Ave. SW
Wyoming, MI 49519
(989) 327-0876
lmccarthy.law@gmail.com

Attorney for Appellant Clifford Tyler

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2015, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record.

/s/ Lucas J. McCarthy
Lucas J. McCarthy
3712 Groveland Ave. SW
Wyoming, MI 49519
(989) 327-0876
lmccarthy.law@gmail.com

Attorney for Appellant Clifford Tyler