TENDERED FOR FILING
MAY 29 2015
DEBORAH S. HUNT, Clerk

No. 13-1876

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
JUN 0 4 2015
DEBORAH S. HUNT, Clerk

CLIFFORD CHARLES TYLER,

*Plaintiff-Appellant,*

v.

HILLSDALE COUNTY SHERIFF'S DEPARTMENT, ET AL.,

*Defendants-Appellees.*

On Appeal from the United States District Court for
the Western District of Michigan (No. 1:12-cv-00523)

**BRIEF OF *AMICUS CURIAE* NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., IN SUPPORT OF PLAINTIFF-APPELLANT AND REVERSAL UPON REHEARING EN BANC**

PAUL D. CLEMENT
*Counsel of Record*
ERIN E. MURPHY
STEPHEN V. POTENZA
BANCROFT PLLC
1919 M Street NW
Suite 470
Washington, DC 20036
(202) 234-0090
pclement@bancroftpllc.com

*Counsel for* Amicus Curiae *National Rifle Association of America, Inc.*

May 29, 2015

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 13-1876     Case Name: Tyler v. Hillsdale County Sheriff's Dept

Name of counsel: Paul D. Clement

Pursuant to 6th Cir. R. 26.1, National Rifle Association of America, Inc., amicus curiae,
                              *Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No.

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

> No.

---

### CERTIFICATE OF SERVICE

I certify that on _____ May 29, 2015 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ Paul D. Clement

---

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTEREST OF *AMICUS CURIAE* ..................................................................... 1

INTRODUCTION .................................................................................................. 1

ARGUMENT .......................................................................................................... 2

I.  Restrictions On The Fundamental Right To Keep And Bear Arms Must Be Subject To Strict Scrutiny ............................................................ 2

CONCLUSION ..................................................................................................... 12

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Buckley v. Am. Constitutional Law Found., Inc.,*
   525 U.S. 182 (1999)......................................................................9

*Burdick v. Takushi,*
   504 U.S. 428 (1992)......................................................................7

*Citizens United v. FEC,*
   558 U.S. 310 (2010)......................................................................9

*Clark v. Jeter,*
   486 U.S. 456 (1988)......................................................................4

*District of Columbia v. Heller,*
   554 U.S. 570 (2008)............................................................*passim*

*Does v. Munoz,*
   507 F.3d 961 (6th Cir. 2007)........................................................4

*Foucha v. Louisiana,*
   504 U.S. 71 (1992)........................................................................4

*Heller v. District of Columbia,*
   670 F.3d 1244 (D.C. Cir. 2011) ................................................3, 9

*Kachalsky v. Cnty. of Westchester,*
   701 F.3d 81 (2d Cir. 2012)...........................................................9

*Lawrence v. Texas,*
   539 U.S. 558 (2003)......................................................................4

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010)..........................................................1, 2, 5, 6

*Nat'l Rifle Ass'n of Am., Inc. v. ATF,*
   700 F.3d 185 (5th Cir. 2012)........................................................9

*Nat'l Rifle Ass'n. v. ATF,*
   714 F.3d 334 (5th Cir. 2013)........................................................3

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*,
    460 U.S. 37 (1983)..................................................................................4

*R.A.V. v. City of St. Paul*,
    505 U.S. 377 (1992)................................................................................9

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
    411 U.S. 1 (1973)....................................................................................4

*Seal v. Morgan*,
    229 F.3d 567 (6th Cir. 2000)..................................................................4

*Shapiro v. Thompson*,
    394 U.S. 618 (1969)................................................................................4

*Stevens v. United States*,
    440 F.2d 144 (6th Cir. 1971)................................................................11

*Thompson v. W. States Med. Ctr.*,
    535 U.S. 357 (2002)................................................................................7

*Tucson Woman's Clinic v. Eden*,
    379 F.3d 531 (9th Cir. 2004)..................................................................4

*Turner Broad. Sys., Inc. v. FCC*,
    520 U.S. 180 (1997)................................................................................7

*Tyler v. Hillsdale Cnty. Sheriff's Dep't*,
    775 F.3d 308 (6th Cir. 2014)..................................................................3

*Ullmann v. United States*,
    350 U.S. 422 (1956)................................................................................6

*United States v. Carolene Prods. Co.*,
    304 U.S. 144 (1938)................................................................................4

*United States v. Greeno*,
    679 F.3d 510 (6th Cir. 2012).............................................................2, 3

*United States v. Masciandaro*,
    638 F.3d 458 (4th Cir. 2011)..................................................................9

*Valley Forge Christian Coll.*
  *v. Ams. United for Separation of Church & State, Inc.,*
  454 U.S. 464 (1982)..................................................................................6

*Zauderer v. Office of Disciplinary Counsel,*
  471 U.S. 626 (1985)..................................................................................4

**Other Authorities**

Robert Barnes & Dan Eggen, *Supreme Court affirms fundamental
  right to bear arms*, Wash. Post, June 29, 2010,
  http://perma.cc/pcv6-9za5......................................................................10

Jess Bravin & Susan Davis, *In a First, High Court Affirms Gun
  Rights*, Wall St. J., June 27, 2008, http://perma.cc/jy96-mfpm....................10

Br. of United States, *District of Columbia v. Heller,*
  554 U.S. 570 (2008) (No. 07-290).............................................................7

Allen Rostron, *Justice Breyer's Triumph in the Third Battle Over the
  Second Amendment*, 80 Geo. Wash. L. Rev. 703 (2012).............................8

## INTEREST OF *AMICUS CURIAE*

The National Rifle Association of America, Inc., ("NRA") is America's foremost and oldest defender of Second Amendment rights. Founded in 1871, the NRA has approximately five million members and is America's leading provider of firearms marksmanship and safety training for civilians. The NRA has a strong interest in this case because large numbers of its members reside within the Sixth Circuit and will be affected by any ruling this Court issues concerning the standard under government actions that burden the right to keep and bear arms should be reviewed.

Pursuant to Federal Rule of Appellate Procedure 29, *amicus curiae* certifies that this brief was not written in whole or in part by counsel for any party, and that no person or entity other than *amicus*, its members, and its counsel has made a monetary contribution to the preparation and submission of this brief. All parties have consented to the filing of this brief.

## INTRODUCTION

The Supreme Court's landmark decisions in *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), leave room for serious debate about whether "levels-of-scrutiny analysis" is appropriate in the Second Amendment context at all. But if any level of scrutiny is to apply to burdens on the right to keep and bear arms, *Heller* and *McDonald* leave no room for

serious debate about what that standard must be. A long line of Supreme Court cases establishes that burdens on fundamental rights are subject to strict scrutiny, and *McDonald* establishes beyond cavil that the individual right protected by the Second Amendment is a fundamental one. Accordingly, just like burdens on any other fundamental right, burdens on the fundamental right to keep and bear arms are subject to strict scrutiny. At a bare minimum, strict scrutiny must apply to any burden on the core Second Amendment "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. Any other conclusion would render the Second Amendment precisely the sort of "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," a conclusion that the Supreme Court has already emphatically rejected. *McDonald*, 561 U.S. at 780 (plurality op.).

## ARGUMENT

### I. Restrictions On The Fundamental Right To Keep And Bear Arms Must Be Subject To Strict Scrutiny.

When considering Second Amendment claims, this Court currently follows a two-step approach under which it first asks "whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood." *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012). If the government is unable to meet its burden of establishing that the challenged law falls outside that scope, then the court "applies the appropriate level of scrutiny" to

2

"'inquir[e] into the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights.'" *Id.* As the panel in this case observed, "[t]here may be a number of reasons to question the soundness" of that approach given "significant language in *Heller* ... that would indicate that lower courts should not conduct interest balancing or apply levels of scrutiny" at all. *Tyler v. Hillsdale Cnty. Sheriff's Dep't*, 775 F.3d 308, 318 (6th Cir. 2014). The panel certainly is not alone in raising that question.[1] But while the question *whether* levels-of-scrutiny analysis should apply at all may be debatable, *what* level should apply, if the analysis is appropriate, is clear: Just like restrictions on any other fundamental right, restrictions on the fundamental right protected by the Second Amendment must be subject to strict scrutiny.

1. When a law "impinges upon a fundamental right explicitly or implicitly protected by the Constitution," it is subject to "strict judicial scrutiny." *San Antonio*

---

[1] *See, e.g., Heller v. District of Columbia*, 670 F.3d 1244, 1282 (D.C. Cir. 2011) (Kavanaugh, J., dissenting) ("*Heller* and *McDonald* didn't just reject interest balancing. The Court went much further by expressly rejecting Justice Breyer's intermediate scrutiny approach, disclaiming cost-benefit analysis, and denying the need for empirical inquiry. By doing so, the Court made clear, in my view, that strict and intermediate scrutiny are inappropriate."); *Nat'l Rifle Ass'n. v. ATF*, 714 F.3d 334, 338 (5th Cir. 2013) (Jones, J., dissenting from denial of rehearing *en banc*) ("[A]s *Heller* requires, we should presuppose that the fundamental right to keep and bear arms is not itself subject to interest balancing. The right categorically exists, subject to such limitations as were present at the time of the Amendment's ratification.").

3

*Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 17 (1973); *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983) ("strict scrutiny [is] applied when government action impinges upon a fundamental right protected by the Constitution"). Indeed, a considerable body of Supreme Court precedent instructs that strict scrutiny applies to all restrictions upon fundamental rights.[2] Courts of Appeals—including this Court—long have repeatedly recognized the same. *See, e.g., Does v. Munoz*, 507 F.3d 961, 964 (6th Cir. 2007) ("Government actions that burden the exercise of those fundamental rights or liberty interests are subject to strict scrutiny" (quoting *Seal v. Morgan*, 229 F.3d 567, 574 (6th Cir. 2000)); *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 544 (9th Cir. 2004) ("[T]he test for when a

---

[2] *See, e.g., Zauderer v. Office of Disciplinary Counsel*, 471 U.S. 626, 651 n.14 (1985) ("governments are entitled to attack problems piecemeal, save where their policies implicate rights so fundamental that strict scrutiny must be applied"); *Lawrence v. Texas*, 539 U.S. 558, 586 (2003) (Scalia, J., dissenting) ("the standard of review that [is] appropriate" for "a fundamental right" is "strict scrutiny"); *Reno v. Flores*, 507 U.S. 292, 302 (1993) (due process "forbids the government to infringe certain 'fundamental' liberty interests ... unless the infringement is narrowly tailored to serve a compelling state interest"); *Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("classifications affecting fundamental rights ... are given the most exacting scrutiny"); *United States v. Carolene Prods. Co.*, 304 U.S. 144, 152 n.4 (1938) ("There may be narrower scope for operation of the presumption of constitutionality when legislation appears on its face to be within a specific prohibition of the Constitution...."); *Foucha v. Louisiana*, 504 U.S. 71, 115 (1992) (Thomas, J., dissenting) ("Certain substantive rights we have recognized as 'fundamental'; legislation trenching upon these is subjected to 'strict scrutiny'...."); *Shapiro v. Thompson*, 394 U.S. 618, 638 (1969) (when a statute "touches on the fundamental right of interstate movement, its constitutionality must be judged by the stricter standard of" review).

4

law is subject to strict scrutiny is when that law *impacts* a fundamental right, not when it infringes it.").

*McDonald* emphatically laid to rest any doubt about whether the right protected by the Second Amendment is a fundamental one. The plurality explained repeatedly that the right to keep and bear arms was considered "among those fundamental rights necessary to our system of ordered liberty," *McDonald*, 561 U.S. at 778; *see also, e.g., id.* at 769 ("the right to bear arms was fundamental to the newly formed system of government"), and Justice Thomas expressly joined the plurality in concluding that Second Amendment right is a fundamental one, *see id.* at 806 (Thomas, J., concurring in part and concurring in the judgment) ("The Court concludes that the right to keep and bear arms applies to the States through the Fourteenth Amendment's Due Process Clause because it is 'fundamental' to the American 'scheme of ordered liberty' .... I agree with that description of the right."). That conclusion followed naturally from *Heller*, in which the Court likewise found that, "[b]y the time of the founding, the right to have arms had become fundamental for English subjects," and that it was this "pre-existing right" that the Second Amendment "codified." *Heller*, 554 U.S. at 592-93.

Taken together, these two principles—that strict scrutiny applies to laws infringing on fundamental rights, and that the Second Amendment protects a fundamental right—compel the conclusion that restrictions on the right to keep and

5

bear arms must be subject, at a minimum, to strict scrutiny. Any other conclusion is impossible to square with *McDonald*'s admonishment that the Second Amendment may not "be singled out for special—and specially unfavorable—treatment." *McDonald*, 561 U.S. at 778-79 (plurality op.). The Supreme Court has emphasized time and again that no constitutional right is "less 'fundamental' than" others, and that there is "no principled basis on which to create a hierarchy of constitutional values." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 484 (1982); *accord Ullmann v. United States*, 350 U.S. 422, 428-29 (1956) ("To view a particular provision of the Bill of Rights with disfavor inevitably results in a constricted application of it. This is to disrespect the Constitution."). To apply anything less than strict scrutiny to restrictions on Second Amendment rights thus would render it precisely the kind of "second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees," that *McDonald* unambiguously instructed it is not. *McDonald*, 561 U.S. at 780.

2. That strict scrutiny applies to laws that burden Second Amendment rights is confirmed by the approaches that the Court rejected in *Heller* and *McDonald*. In *Heller*, the Court explicitly and definitively rejected not only rational basis review but also Justice Breyer's "interest-balancing" approach. 554 U.S. at 628, 634; *see also McDonald*, 561 U.S. at 790-91 (plurality op.) (explaining that incorporation of Second Amendment will not require judges "to assess the costs and benefits of

firearms" because, "while [Justice Breyer's] opinion in *Heller* recommended an interest-balancing test, the Court specifically rejected that suggestion"). And, in practice, that "interest-balancing" approach is nothing more than intermediate scrutiny by another name.

Justice Breyer called his approach "interest-balancing" because in his view "almost every gun-control regulation" will advance an important or compelling government interest in public safety. *See Heller*, 554 U.S. at 689 (Breyer, J., dissenting). Thus, in his view, regardless whether a court applies strict scrutiny (requiring a "compelling" government interest) or intermediate scrutiny (requiring only an "important" one), the analysis ultimately would turn on the search for the appropriate degree of fit, which he described as interest-balancing. *See id.* at 687-91 (Breyer, J., dissenting). In explaining this approach, however, Justice Breyer specifically relied upon cases that expressly applied intermediate scrutiny. *Id.* at 690 (Breyer, J. dissenting) (relying upon *Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180 (1997) and *Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002)). Indeed, Justice Breyer even invoked *Burdick v. Takushi*, 504 U.S. 428 (1992), the case on which the United States principally relied in advocating that the Court adopt intermediate scrutiny. *See* Br. of United States at 8, 24, 28, *District of Columbia v. Heller*, 554 U.S. 570 (2008) (No. 07-290).

Although the *Heller* Court avoided any definitive pronouncement regarding what (if any) level of scrutiny applies where the Second Amendment is concerned, it did make clear that "interest-balancing" review cannot suffice, as it is so malleable as to provide "no constitutional guarantee at all." *Heller*, 554 U.S. at 634. Yet, some courts nonetheless have persisted in applying a form of "intermediate scrutiny" to Second Amendment claims that is not meaningfully different from the "interest-balancing" approach that *Heller* squarely rejected. *See* Allen Rostron, *Justice Breyer's Triumph in the Third Battle Over the Second Amendment*, 80 Geo. Wash. L. Rev. 703 (2012). The panel correctly resisted the government's urging to follow in those erroneous footsteps, and the *en banc* Court should do the same. Decades of caselaw from both the Supreme Court and this Court confirm that burdens on fundamental rights are subject to strict scrutiny. There is no plausible justification consistent with *Heller* and *McDonald* for treating the fundamental right protected by the Second Amendment any differently from the fundamental rights protected by the Constitution's other amendments.

3. At the very least, strict scrutiny must apply to laws that burden the "right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Heller*, 554 U.S. at 635. Even as courts have erroneously refused to apply strict scrutiny to other burdens on the right to keep and bear arms, most nevertheless have acknowledged that strict scrutiny must apply where laws burden such *core* Second

Amendment rights. *See, e.g., Nat'l Rifle Ass'n of Am., Inc. v. ATF*, 700 F.3d 185, 195 (5th Cir. 2012) ("A regulation that threatens a right at the core of the Second Amendment—for example, the right of a law-abiding, responsible adult to possess and use a handgun to defend his or her home and family—triggers strict scrutiny." (citation omitted)).[3] Any less protective approach is wholly incompatible with *Heller, McDonald*, and broader principles of constitutional interpretation.

Indeed, in any other context, laws that burden the core of a fundamental right are virtually unconstitutional per se. For example, in the First Amendment context, "content-based" restrictions not only are subject to but rarely survive strict scrutiny, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382, 395 (1992), and the same is true of laws that restrict "core" political speech, *see, e.g., Citizens United v. FEC*, 558 U.S. 310, 339 (2010); *Buckley v. Am. Constitutional Law Found., Inc.*, 525 U.S. 182, 207 (1999) (Thomas, J., concurring) (collecting cases). To treat the Second Amendment any differently would be irreconcilable with *Heller* and *McDonald*. The Court in *Heller* not only categorically rejected Justice Breyer's "interest-balancing" approach

---

[3] *See also, e.g., United States v. Masciandaro*, 638 F.3d 458, 470 (4th Cir. 2011) ("[W]e assume that any law that would burden the 'fundamental,' core right of self-defense in the home by a law-abiding citizen would be subject to strict scrutiny."); *Heller v. District of Columbia*, 670 F.3d 1244, 1257 (D.C. Cir. 2011) ("a regulation that imposes a substantial burden upon the core right of self-defense protected by the Second Amendment must have a strong justification"); *cf. Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 89, 93-94 (2d Cir. 2012) (observing that "Second Amendment guarantees are at their zenith within the home").

and any lesser standard of review, but also cast substantial doubt on whether applying a levels-of-scrutiny approach to the Second Amendment was prudent. *See Heller*, 554 U.S. at 634-35. Although the Court is essentially bound by the levels-of-scrutiny approach as a matter of stare decisis in other contexts, it is not so constrained in the context of the Second Amendment. Thus, when the Court confronted a law in *Heller* that was a direct affront to the Second Amendment, it simply held it unconstitutional, without specifying the appropriate level of scrutiny.

While some courts have adopted a distinction between core and non-core Second Amendment rights—seemingly as an excuse to dilute the amendment's protection in any context that can be labeled non-core—faithful application of *Heller* and *McDonald* demands that laws that interfere with the central protections of the Second Amendment either be held unconstitutional or, at an absolute minimum, be subjected to strict scrutiny. *Heller* (which rejected interest-balancing as a mechanisms to dilute Second Amendment rights enshrined in the constitutional text) and *McDonald* (which rejected an effort to treat the Second Amendment as less than a fundamental right) require nothing less. When those decisions were issued, they were justly hailed by proponents and critics alike as watershed decisions.[4] Before

---

[4] *See generally* Jess Bravin & Susan Davis, *In a First, High Court Affirms Gun Rights*, Wall St. J., June 27, 2008, http://perma.cc/jy96-mfpm; Robert Barnes & Dan Eggen, *Supreme Court affirms fundamental right to bear arms*, Wash. Post, June 29, 2010, http://perma.cc/pcv6-9za5.

*Heller*, the law in this Circuit, as in virtually every other, was that the Second Amendment did not protect individual rights at all. *See Stevens v. United States*, 440 F.2d 144, 149 (6th Cir. 1971). The Supreme Court's emphatic rejection of that view cannot be without consequence. As this Court fixes the standard of review for this Circuit, it must adopt a standard that is faithful to the Supreme Court's recognition that the right protected by the Second Amendment is both individual and fundamental. A standard that denies strict scrutiny even to the core protections of the Second Amendment plainly would fail that test.

* * *

In sum, it is too late in the day to argue that the right to keep and bear arms is less fundamental than the other individual rights enumerated in the Constitution or should be diluted to provide less protection than the Framers guaranteed in the constitutional text. There is accordingly no basis to review *any* law that burdens that right under anything less demanding than the strict scrutiny that governs burdens on the exercise of other fundamental rights. But at a bare minimum, there is certainly no basis to apply anything less than strict scrutiny to laws that strike at the very core of the Second Amendment right. Just like any other enumerated constitutional right, "[t]he very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634. Because that is

precisely what lesser standards of review would empower legislatures and courts to do, they must be rejected as inconsistent with the Constitution's protection of the individual and fundamental right to keep and bear arms and the Supreme Court's decisions definitively interpreting that right.

## CONCLUSION

For the foregoing reasons, this *en banc* court should reverse the order of the district court.

Respectfully submitted,

s/Paul D. Clement
PAUL D. CLEMENT
*Counsel of Record*
ERIN E. MURPHY
STEPHEN V. POTENZA
BANCROFT PLLC
1919 M Street NW, Suite 470
Washington, DC 20036
(202) 234-0090
pclement@bancroftpllc.com

*Counsel for* Amicus Curiae *National Rifle Association of America, Inc.*
May 29, 2015

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) and 32(a)(7)(B) because this brief contains 2,916 words and is no more than half the length of the parties' supplemental briefs on rehearing *en banc*, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word 2013 in 14-point Times New Roman type.

Dated: May 29, 2015

s/Stephen V. Potenza<br>
Stephen V. Potenza

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2015, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit via electronic mail. The Clerk of the Court will provide service to all registered attorneys participating in the case.

s/Paul D. Clement<br>
Paul D. Clement