No. 13-1876

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

CLIFFORD CHARLES TYLER

    Plaintiff – Appellant

v.

HILLSDALE COUNTY SHERIFF'S DEPARTMENT, et al,

    Defendants – Appellees

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN

### APPELLANT'S SUPPLEMENTAL REPLY BRIEF

Lucas J. McCarthy
3712 Groveland Ave. SW
Wyoming, MI 49519
(989) 327-0876
Counsel for Appellant

# TABLE OF CONTENTS

TABLE OF CONTENTS……………………….……………………..i

TABLE OF AUTHORITIES…………………….…………………ii

ARGUMENT……………………………………………………………1

    I.    *HELLER* DOES NOT PRECLUDE STRICT SCRUTINY…………........1

    II.    THE GOVERNMENT OVER-EXAGGERATES THE DIFFICULTIES……………………………………………………4

    III.    PERMITTING A REVIEW ENSURES A SUFFCIENT FIT…………...8

CONCLUSION……………………………………………………...12

CERTIFICATE OF COMPLIANCE…………………………………...13

CERTIFICATE OF SERVICE……………………………………………14

# TABLE OF AUTHORITIES

Statutes and Regulations

18 U.S.C. § 922(g)(4)……………………………………………………………..*passim*

18 U.S.C. §925(c)…......................................................................................6, 12

NICS Improvement Amendments Act of 2007, Pub. L. 110-180, 121 Stat. 2559……………………………………………………………………………….6, 10

Cases

*District of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783 (2008)………........1-4

*Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005)................................................................................................................1

*McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014)………………………………9

*United States v. Marzzarella*, 614 F.3d 85, 96-97 (3rd Cir. 2010)…………………3

# ARGUMENT

While much of the Government's latest arguments have already been addressed in prior briefs, three points necessitate further response. First, this Court's opinion would not conflict with *Heller* if it applied strict scrutiny. Second, the government has exaggerated the difficulties of a district court review. Finally, permitting Mr. Tyler a review despite the accident of his geography is necessary to ensure a sufficient fit between the Government's interests and its regulatory scheme.

## I.     *Heller* Does Not Preclude Strict Scrutiny

In arguing that *Heller* precludes applying strict scrutiny, the Government ignores a crucial distinction: *Heller* refers to "longstanding prohibitions on the possession of firearms by . . . the mentally ill," not mentally healthy individuals like Mr. Tyler. *See District of Columbia v. Heller*, 554 U.S. 570, 626 (2008). Due to the procedural position of this case, this Court must make its decision while assuming Mr. Tyler is the mentally healthy individual he and his doctors say he is. *See Hill v. Blue Cross and Blue Shield of Michigan*, 409 F.3d 710, 716 (6th Cir. 2005). This assumption almost certainly reflects reality, since recent evaluations found Mr. Tyler to be mentally heathy. Panel Op. 6. Furthermore, he has had nearly three decades of mental health while living peacefully and drug free as a law-abiding citizen within his community. Panel Op. 5-6.

The Government is therefore overreaching when arguing that *Heller*'s "presumptively lawful" language provides guidance on the level of scrutiny required for a statute affecting both the mentally ill *and* the mentally healthy. The *Heller* Court never communicated that any presumption applies specifically to the language of §922(g)(4), never cited that provision, and the language used ("mentally ill") fails to track that provision. Moreover, even under intermediate scrutiny, "[t]he burden of justification is demanding and it rests entirely on the State." *United States v. Virginia*, 518 U.S. 515, 533 (1996). Consequently, the use of the word "presumptively" cannot truly present any guidance here. Under either strict or intermediate scrutiny, the government's burden of justification would not be presumed met. Given that Mr. Tyler is mentally healthy, the *Heller* dicta "is insufficient—by itself—to support the restriction as to individuals who have been involuntarily committed at some time in the past." Panel Op. 10.

Moreover, the Government is grossly oversimplifying when it claims that this court should apply intermediate scrutiny because every other circuit court has applied intermediate scrutiny to a §922(g)(4) challenge. Appellee's Supp. Brief 11-12. The other relevant circuit court decisions have been more nuanced than the Government is willing to admit. Appellant's Supp. Brief IA. Virtually all (if not all) the other circuits to have considered Second Amendment challenges post-*Heller* have reasoned that like in First Amendment jurisprudence, challenges to

regulations affecting the Second Amendment may trigger different standards of scrutiny and that intermediate scrutiny is appropriate where "the law does not severely limit the possession of firearms." *United States v. Marzzarella*, 614 F.3d 85, 96-97 (3rd Cir. 2010); Appellant's Supp. Brief IA (surveying circuit cases).

That other circuits have ultimately applied intermediate scrutiny is unsurprising given the nature of the cases before them, none of which dealt with the level of burdening of the Second Amendment's core protection like the case at hand: the permanent, unreviewable ban of a law-abiding, responsible individual's possession of a firearm for self-defense, even in the privacy of his own home. Given that this case involves the complete denial of exercise of a fundamental right—not just a regulation as to time, place, or manner—applying strict scrutiny here would be entirely consistent with the other Circuits' decisions. In fact, to do otherwise would be potentially *inconsistent* with those decisions.

While sidestepping how the *Heller* dicta provides guidance when a firearm ban burdens the mentally healthy, the Government has argued instead that Appellant sidestepped *Heller*'s language about "law abiding, *responsible* citizens." Appellee's Supp. Brief. 9-10 (quoting *Heller*, 554 U.S. at 635). The Government's argument is surprising, as Appellant has repeatedly argued that "[j]ust as *Heller* contemplates, Mr. Tyler is a 'law-abiding, responsible citizen' interested in use of "arms in defense of hearth and home." Appellant's Reply Brief 9 (quoting *Heller*,

3

554 U.S. at 635). That *Heller* speaks of "responsible" citizens is exactly why Appellant has repeatedly stressed Mr. Tyler's decades of peaceful co-existence within his community without any record of further mental illness, drug use, criminal convictions, or risk to himself or others.

Indeed, it is more likely that by attempting to characterize Mr. Tyler solely by the fleeting moments of the worst period of his life, the Government has failed to fairly consider how much of a "responsible" citizen Mr. Tyler truly is. No one here is arguing in favor of permitting the mentally ill to possess a firearm. However, the Government has repeatedly sidestepped the question of how language about the mentally ill applies to the mentally healthy. The Government's argument that *Heller* precludes applying strict scrutiny here is incorrect, as *Heller* never communicated a presumption in favor of firearm prohibitions when they burden law-abiding, mentally healthy, responsible citizens like Mr. Tyler.

## II. The Government Over-Exaggerates the Difficulties

The Government exaggerates the difficulties presented by tasking district courts with making mental health determinations for purposes of a §922(g)(4) review. First, the Government's efforts to argue the merits of involuntary commitments as a trigger for a firearm possession ban are a red herring. *See* Appellee's Brief 13. Appellant has never argued against using involuntary commitment proceedings as a trigger for a §922(g)(4) firearm ban and has conceded the reasonableness of the

4

scheme repeatedly. The real issue here is whether almost thirty years after the trigger occurred, the Government's interest in preventing the mentally ill from possessing firearms is furthered by preventing a mentally healthy individual from demonstrating he presents no heightened risk of harm.

Second, these reviews would not be as impossible as the Government presents when stating that "district courts . . . are poorly equipped to make difficult predictions regarding the future mental stability of individuals and the likelihood of future violence." Appellee's Supp. Brief 14. This is a somewhat strange argument, since the entire scheme under §922(g)(4) piggybacks on such determinations made during commitment hearings. It is odd that courts could be so capable in making such determinations as to trigger a §922(g)(4) firearm ban but then be so completely inadequate in making such determinations as to be incapable of performing a §922(g)(4) review. If we take the Government's argument seriously, then it seems to be questioning the efficacy of piggybacking on judicial determinations at all, since courts are so poorly equipped to make such decisions.

Third, Appellant has always contended that applicants for relief from §922(g)(4) would bear the burden of demonstrating their mental health. If the applicant would be unable to do so (perhaps because the determination is as difficult as the Government claims), then the §922(g)(4) firearm ban would remain. Hence, the Government's concerns about whether courts may make mental health

determinations merely suggests that applicants for such a review may face a considerable challenge. Whether to permit a review is of little consequence then, since applicants would—if the Government is right—have difficulty demonstrating to a court's satisfaction that they present no heightened risk of harm.

Fourth, while determining the exact standard for reviewing a §922(g)(4) ban may be an issue for the parties to litigate on remand, Congress has already provided a standard through its unfunded review program: "[T]he Attorney General may grant such relief if it is established to his satisfaction that the circumstances regarding the disability, and the applicant's record and reputation, are such that the applicant will not be likely to act in a manner dangerous to public safety and that the granting of the relief would not be contrary to the public interest." 18 U.S.C. §925(c). The standard employed by the ATF-approved state review programs, such as in Kentucky, is nearly identical. *See* NICS Improvement Amendments Act of 2007 ("NICS"), Pub. L. 110-180, 121 Stat. 2559, 2569-70. To remain consistent with the Government's standard for reviewing a §922(g)(4) ban as used elsewhere, the district court's task, on remand, should be to determine whether the circumstances regarding Mr. Tyler's mental health, along with his record and reputation, are such that the court is satisfied that (1) Mr. Tyler would be unlikely to act in a manner dangerous to public safety and (2) granting him relief would not be contrary to the public interest.

Fifth, Appellant needs not convince this Court, as the Government suggests, that "an involuntary commitment ceases to be probative after some unspecified period" or that "[t]he Constitution . . . require[s] Congress to minimize the significance of judicially determined mental instability." Appellee's Supp. Brief 1. Of course, Appellant would argue that evidence from almost thirty years ago is often less probative of someone's mental health than comparable evidence from today. However, nothing about this case or the Constitution is requiring this Court to make a determination on probative value. On remand, the district court should be permitted to consider Mr. Tyler's commitment, along with other evidence of his mental health, and assign the commitment the probative value that the district court deems merited under the circumstances.

Finally, permitting a review would almost certainly not open a floodgate of cases that would "threaten to overwhelm the resources of district courts." *See* Appellee's Supp. Brief 15. While the NICS database may contain 3 million *records*, the Government has not made clear how many *individuals* are in that database. Furthermore, those individuals are distributed throughout the nation and many already have the opportunity to use an ATF-approved state review program instead. No one has suggested that the state review programs have been flooded with applicants to the point that they threaten to overwhelm state resources any more than applicants for any other state program would.

7

Even in states where no such program exists, an applicant would still need to bring a case to federal court, a task complicated enough to prevent most individuals from doing so without an attorney. Any attorney bringing such a case would be bound by the normal ethical prohibitions against filing frivolous cases, which would tend to narrow the field of cases to the subset of individuals in the NICS database who can present evidence of mental health. The Government's suggestion that district courts would be overwhelmed fails to explain how these cases would be more overwhelming in number or complexity than any of the other myriad causes of action brought before district courts each day.

### III. Permitting a Review Ensures a Sufficient Fit

Permitting Mr. Tyler a review strikes a reasonable balance of interests given the Government's complete deprivation of a fundamental right to protect oneself at home. Should the Government have concerns about Mr. Tyler's mental health, it would be able to raise those concerns before the district court, with the potential outcome that Mr. Tyler would fail to convince the court that he poses no heightened risk of harm. Only after ample opportunity for the Government to object and provide contrary evidence and argument might the following inherently reasonable possibility occur: a mentally healthy individual proven to pose no special risk of harm could again exercise a constitutional right.

Permitting Mr. Tyler the burden of demonstrating his mental health would therefore not endanger the government's efforts to further its laudable interests. If an individual does in fact demonstrate his or her mental health, the Government has never articulated why continuing to ban that individual's possession of a firearm would further any government interest. Permitting individuals like Mr. Tyler a review is a trivial concession for a regulatory scheme that would otherwise completely and permanently bar the mentally healthy from exercise of an enumerated constitutional right.

That the Government has failed to demonstrate a sufficient fit is obvious even if intermediate scrutiny applied. Under intermediate scrutiny, a law "must be narrowly tailored to serve a significant governmental interest." *McCullen v. Coakley*, 134 S. Ct. 2518, 2534 (2014) (quotation marks omitted). To satisfy this requirement, a law "must not burden substantially more [of the protected activity] than is necessary to further the government's legitimate interests." *Id.* at 2535 (quotation marks omitted). Broad "prophylactic measure[s]" are valid only when "less restrictive measures [are] inadequate." *Id* at 2540. "To meet the requirement of narrow tailoring, the government must *demonstrate* that alternative measures that burden substantially less [protected conduct] would *fail* to achieve the government's interests." *Id.* (emphasis added).

The Government cannot possibly make the required showing here, because the Government itself *encourages* States to create a less restrictive alternative by giving those subject to the disability of §922(g)(4) the opportunity to regain their Second Amendment rights. *See* NICS §103(c) (eligibility for participation in grant program conditioned on state establishment of program to review individuals barred from firearm possession under §922(g)(4)). The Government has never argued that reviews through such state programs are causing the Government to fail to achieve its interests. A similar review for Mr. Tyler could not possibly do so either when the two possible outcomes are these: (1) Mr. Tyler's firearm ban continues or (2) a mentally healthy individual proven to pose no heightened risk of danger is able to exercise a constitutional right.

Furthermore, the fact that an opportunity for review varies by the pure accident of the state within which one resides adds an additional layer of unreasonableness over the Government's already unreasonable position. First, virtually everything the Government is arguing in this case—from the difficulty of assessing mental health to Congress's concerns about providing any review whatsoever—are seemingly absent within the state of Kentucky, where the Government approves reviews like the one Mr. Tyler is requesting. Yes, Kentucky has an ATF-approved review program, but surely if Kentucky can meet the Government's concerns, so too could a federal district court in Michigan. By encouraging and approving state

review programs, the Government has clearly admitted that reviews of §922(g)(4) firearm bans can occur without undermining its interest in protecting the public.

Second, it is irrelevant that the Michigan legislature has not accepted the Federal Government's effort to shift the costs and difficulties of such a review to the state. The Government has imposed the opportunity to fund a review for a federal firearm ban while defunding its own review—all without considering existing state firearm regulations and review programs. As argued previously, Michigan already has state restrictions on possession by the mentally ill and permits reviews to remove such restrictions if individuals demonstrate mental health. Appellant's Supp. Brief 18. The federally imposed lifetime ban without review is decidedly more restrictive than Michigan's laws suggest the state prefers.

What is relevant instead is whether a mentally healthy individual's exercise of constitutionally protected activities should be suspended indefinitely until either government—federal or state—catches the hot potato: the task of determining if continuing that individual's federal firearm ban furthers the federal government's interests. Within Michigan, no government has caught that hot potato, but the federal government's response is to point toward the Michigan legislature and shrug off responsibility. Yet it is the federal government who bears the burden here of demonstrating a sufficient fit between federal regulations and federal interests, and that responsibility cannot be shifted to the states. That fit becomes difficult to

perceive when whether Mr. Tyler may be afforded a review turns upon the accident of his geographical state, not his mental state. Mentally healthy individuals unlikely to endanger themselves or the public should not be prohibited from exercising fundamental constitutional rights solely because they happen to reside in Michigan rather than Kentucky.

## CONCLUSION

Mr. Tyler is not requesting anything unreasonable that would jeopardize the Government's efforts to keep firearms from the mentally ill. The Government, however, is requesting something inherently unreasonable: a permanent, unreviewable firearm ban on law-abiding individuals who could prove mental health (except if such individuals happen to live in states like Kentucky). Under 18 U.S.C. §925(c), any individual whose application for relief from §922(g)(4) has been denied may petition a federal district court for judicial review. Mr. Tyler has so petitioned a federal district court; his only request here is that such a review actually occur. Mr. Tyler humbly requests that he be permitted the opportunity to demonstrate he is the sort of responsible, law-abiding, mentally healthy individual the Second Amendment was adopted to protect.

Dated: 8/10/2015            /s/ Lucas J. McCarthy
                            Lucas J. McCarthy, Esq.
                            3712 Groveland Ave. SW
                            Wyoming, MI 49519
                            989-327-0876
                            lmccarthy.law@gmail.com

# CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. 32(a)(7)(B) and this Court's briefing letter dated April 23, 2015 because this brief contains no more than 12 pages, excluding the parts of the brief exempted by Fed. R. App. 32(a)(7)(B)(iii) and 6th Cir. R. 28(b).

This brief complies with the typeface requirements of Fed. R. App. 32(a)(5) and the type style requirements of Fed. R. App. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using 14-point Times New Roman font.


Executed on August 10, 2015.

<u>/s/ Lucas J. McCarthy</u>
Lucas J. McCarthy, Esq.
3712 Groveland Ave. SW
Wyoming, MI 49519
989-327-0876
lmccarthy.law@gmail.com

Attorney for Appellant Clifford Tyler

**CERTIFICATE OF SERVICE**

I hereby certify that on August 10, 2015, I electronically filed the foregoing with the Clerk of the United States Court of Appeals for the Sixth Circuit using the CM/ECF system, which will provide notification of such filing to all counsel of record.


Executed on August 10, 2015.

/s/ Lucas J. McCarthy
Lucas J. McCarthy, Esq.
3712 Groveland Ave. SW
Wyoming, MI 49519
989-327-0876
lmccarthy.law@gmail.com

Attorney for Appellant Clifford Tyler