**TENDERED FOR FILING**

SEP 17 2015

DEBORAH S. HUNT, Clerk

No. 13-1876

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

### CLIFFORD CHARLES TYLER,

*Plaintiff-Appellant,*

v.

### HILLSDALE COUNTY SHERIFF'S DEPARTMENT, ET AL.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Western District of Michigan
Honorable Gordon J. Quist
Civil Case No. 1:12-cv-00523

## BRIEF OF *AMICUS CURIAE*
## STATES UNITED TO PREVENT GUN VIOLENCE
## IN SUPPORT OF AFFIRMANCE

DANIEL B. ASIMOW (Cal. Bar No. 165661)
DANIEL M. PASTOR (Cal. Bar No. 297948)
ARNOLD & PORTER LLP
Three Embarcadero Center
San Francisco, CA 94111-4024

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

|  | Page |
|---|---:|
| INTEREST OF AMICUS CURIAE | 1 |
| INTRODUCTION | 1 |
| <u>ARGUMENT</u> | 3 |
| I. THE SECOND AMENDMENT DOES NOT PROTECT FIREARMS POSSESSION BY THE MENTALLY ILL AND PREVIOUSLY INSTITUTIONALIZED PERSONS. | 3 |
| II. EVEN IF THE CHALLENGED LAW IS WITHIN THE SCOPE OF THE SECOND AMENDMENT, INTERMEDIATE SCRUTINY SHOULD APPLY. | 7 |
|     A. For Cases Falling Within the Scope of the Second Amendment, the Sliding Scale Analysis Employed by Other Circuits Is the Best Approach for Determining the Level of Scrutiny. | 8 |
|         1. The Approach Taken by the Ninth Circuit in *Chovan* Provides a Sound Model For Deciding This Case. | 9 |
|         2. Tyler's Involuntary Commitment to a Mental Institution Placed Him Outside of the Core Protection of the Second Amendment. | 10 |
|     B. Strict Scrutiny is Incompatible with the Supreme Court's View that Firearms Prohibitions on the Mentally Ill Are Presumptively Lawful. | 12 |
| CONCLUSION | 13 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addington v. Texas,*
   441 U.S. 418 (1979) ............................................................. 10

*District of Columbia v. Heller,*
   554 U.S. 570 (2008) ...................................................... *passim*

*Ezell v. City of Chicago,*
   651 F.3d 684 (7th Cir. 2011) ................................................. 8

*Heller v. District of Columbia,*
   670 F.3d 1244 (D.C. Cir. 2011) ............................................ 5

*McDonald v. City of Chicago,*
   561 U.S. 742 (2010) .............................................................. 12

*NRA v. ATF,*
   700 F.3d 185 (5th Cir. 2012) ............................................. 5, 9

*Peruta v. San Diego County,*
   742 F.3d 1144 (9th Cir. 2014), *reh'g en banc granted, opinion vacated* (Mar. 26, 2015) ............................................... 9

*United States v. Barton,*
   633 F.3d 168 (3d Cir. 2011) .................................................. 4

*United States v. Bass,* 404 U.S. 336 (1971) .......................... 4

*United States v. Chester,*
   628 F.3d 673 (4th Cir. 2010) ............................................. 8, 9

*United States v. Chovan,*
   735 F.3d 1127 (9th Cir. 2013) ................................... 9, 10, 13

*United States v. Greeno,*
   679 F.3d 510 (6th Cir. 2012) ................................................. 5

*United States v. Marlow,*
   278 F.3d 581 (6th Cir. 2002) ................................................. 6

*United States v. Marzzarella,*
   614 F.3d 85 (3d Cir. 2010) .................................................... 4

*United States v. Rehlander*,
  666 F.3d 45 (1st Cir. 2012) .......... 7

*United States v. Skoien*,
  614 F.3d 638 (7th Cir. 2010) .......... 6, 13

*United States v. Vongxay*,
  594 F.3d 1111 (9th Cir. 2010) .......... 6

*United States v. White*,
  593 F.3d 1199 (11th Cir. 2010) .......... 5

*Washington v. Glucksberg*,
  521 U.S. 702 (1997) .......... 11

**Statutes, Rules, and Regulations**

18 U.S.C. § 922(g)(4) .......... 6, 9

27 C.F.R. § 478.11 .......... 6, 7

FED. R. APP. P. 29(c)(5) .......... 1

**Other Authorities**

Joseph Blocher, *Categoricalism and Balancing in First and Second Amendment Analysis*, 84 N.Y.U. L. REV. 375, 413-14 (2009) .......... 4

J.W. Swanson et al., *Mental Illness and Reduction of Gun Violence and Suicide: Bringing Epidemiologic Research to Policy*, 25 ANNALS OF EPIDEMIOLOGY 336 (2014), http://dx.doi.org/10.1016/j.annepidem.2014.03.004 .......... 11

J.W. Swanson et al., *Preventing Gun Violence Involving People with Serious Mental Illness, in* REDUCING GUN VIOLENCE IN AMERICA: INFORMING POLICY WITH EVIDENCE AND ANALYSIS (Daniel W. Webster & John S. Vernick eds., 2013) .......... 12

# INTEREST OF AMICUS CURIAE[1]

*Amicus curiae* States United to Prevent Gun Violence ("States United") is a national non-profit organization focused on supporting state-based gun violence prevention organizations. Along with its 30 state affiliates, including the Michigan Coalition to Prevent Gun Violence, States United supports efforts to keep guns out of the hands of felons, terrorists, and the dangerously mentally ill. In connection with its work, States United has a keen interest in the constitutionality of federal, state, and local gun laws. The panel decision in this action threatens to undermine States United's advocacy efforts by imposing strict scrutiny on and requiring individualized analysis of firearms regulations. In this brief, States United offers an alternative analytical approach to applying the Second Amendment that may be helpful to the Court in resolving this case.

# INTRODUCTION

This case presents the critical question of what standard of review should govern as-applied challenges to the federal ban on the possession of firearms by persons that have been previously committed involuntarily to a mental institution. In its now-vacated opinion ("Op."), the panel majority erred by applying strict

---

[1] *Amicus curiae* make the following disclosure pursuant to Federal Rule of Appellate Procedure 29(c)(5): no party's counsel authored this brief in whole or in part. No party, party's counsel, nor any other person contributed money to fund the preparation or submission of this brief, other than *amicus curiae*. All parties have consented to the filing of this brief.

1

scrutiny to this common-sense regulation. In doing so, the panel departed from the sound analytical approach adopted by every other federal circuit court that has considered prohibitions on the possession of firearms by felons and the mentally ill.

This case does not warrant heightened scrutiny of any kind because it involves a challenge to a prohibition on the possession of firearms by the mentally ill that the Supreme Court declared presumptively lawful in *District of Columbia v. Heller*, 554 U.S. 570 (2008). The Supreme Court explained that longstanding federal prohibitions on firearm possession by felons and the mentally ill are exceptions to the Second Amendment. Just as the First Amendment does not protect incitement, obscenity, defamation, or fighting words, the Second Amendment does not protect firearms possession by felons and the mentally ill.

But even if this Court were to conclude that the Second Amendment right extends to previously institutionalized persons, the panel erred by holding that a single level of review applies to all Second Amendment challenges—something no other court of appeals has done—and then compounded that error by holding that the singular standard of review in Second Amendment cases must be strict scrutiny. The alternative approach taken by other circuits determines the appropriate level of scrutiny by analyzing: (1) how close the contested regulation

comes to the "core" Second Amendment right, and (2) the severity of the burden imposed on the right.

Under this approach, intermediate scrutiny should be applied in most cases where a firearms regulation burdens rights protected by the Second Amendment. Assuming that individuals with a previous court-ordered commitment to a mental institution are within the scope of the Second Amendment, they are far from its core, which the Supreme Court explained in *Heller*, is the right of law-abiding, *responsible* individuals to possess certain firearms for defense of the home. Other circuits that have evaluated firearms laws that do not impact the "core" Second Amendment right have all applied intermediate scrutiny.

## ARGUMENT

### I. THE SECOND AMENDMENT DOES NOT PROTECT FIREARMS POSSESSION BY THE MENTALLY ILL AND PREVIOUSLY INSTITUTIONALIZED PERSONS.

In *Heller*, the Supreme Court indicated that the longstanding federal prohibition on firearm possession by the mentally ill passed constitutional muster. The Court noted that the Second Amendment right "is not unlimited," and that nothing in its holding should "be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." 554 U.S. at 626–27. *Heller* presented the ban on firearm possession by the mentally ill as prototypical of a broader—and expressly non-exhaustive—set of "presumptively lawful

regulatory measures." *Id.* at 626–27 & n.26. Such prohibitions are "meant to keep firearms out of the hands of presumptively 'risky people'...." *United States v. Barton*, 633 F.3d 168, 173 (3d Cir. 2011) (*quoting United States v. Bass*, 404 U.S. 336, 345 (1971)).

*Heller* also suggested that the ban on the possession of firearms by the mentally ill is one of a set of categorical "exceptions" to the Second Amendment that are comparable to the First Amendment's "exceptions for obscenity, libel, and disclosure of state secrets,"—forms of speech that are categorically excluded from the free speech guarantee. 554 U.S. at 635 ("there will be time enough to expound upon the historical justifications for the exceptions we have mentioned when those exceptions come before us").[2] Other federal circuits, which have ruled on the prohibitions on firearms possession by felons and the mentally ill post-*Heller*, have followed the Supreme Court's guidance and interpreted the prohibitions as exceptions to the Second Amendment. *United States v. Marzzarella*, 614 F.3d 85, 91 (3d Cir. 2010) ("[T]hese longstanding limitations are exceptions to the right to bear arms."); *Heller v. District of Columbia*, 670 F.3d 1244, 1253 (D.C. Cir. 2011)

---

[2] *See also* Joseph Blocher, *Categoricalism and Balancing in First and Second Amendment Analysis*, 84 N.Y.U. L. REV. 375, 413–14 (2009) ("*Heller* categorically excludes certain types of 'people' and 'Arms' from Second Amendment coverage, denying them any constitutional protection whatsoever .... The Court's approval of 'prohibitions,' rather than regulations, confirms that felons and the mentally ill, however defined, are excluded entirely from Second Amendment coverage.")

4

(*Heller II*) ("*Heller* tells us 'longstanding' regulations are 'presumptively lawful,' that is, they are presumed not to burden conduct within the scope of the Second Amendment.") (citation omitted); *NRA v. ATF*, 700 F.3d 185, 196 (5th Cir. 2012) ("[A] longstanding, presumptively lawful regulatory measure—whether or not it is specified on *Heller*'s illustrative list—would likely fall outside the ambit of the Second Amendment."); *United States v. White*, 593 F.3d 1199, 1205 (11th Cir. 2010) (upholding federal firearm prohibition for domestic violence misdemeanants on the ground that it is a "presumptively lawful 'longstanding prohibition[] on the possession of firearms.'"). This Court should similarly conclude that persons previously institutionalized for mental illness categorically fall outside the scope of Second Amendment protection and that heightened scrutiny of any sort is unwarranted. *See United States v. Greeno*, 679 F.3d 510, 519 (6th Cir. 2012) ("If the Government demonstrates that the challenged statute 'regulates activity falling outside the scope of the Second Amendment right . . . then the analysis can stop there; the regulated activity is categorically unprotected, and the law is not subject to further Second Amendment review.'").

*Heller*'s invocation of the longstanding and "presumptively lawful" ban on firearm possession by the "mentally ill," is a direct reference to the federal statute challenged here—18 U.S.C. § 922(g)(4)—which prohibits the possession of a firearm by any person who "has been adjudicated as a mental defective or who has

been committed to a mental institution." *Id.*; *see* Supplemental Brief for Federal Appellees (Dkt. No. 62) at 8–9. The panel decision brushed aside the Supreme Court's deliberate effort to exclude the mentally ill from the scope of the Second Amendment by finding that persons who have been committed to a mental institution are a category that is not coextensive with the mentally ill (Op. at 10), but this Court should reject that course.[3]

An involuntary commitment serves as a crucial legal proxy for mental illness, which is often difficult to identify and diagnose, just as a prior felony conviction serves as a proxy for increased risk of future criminal activity. Supplemental Brief for Federal Appellees at 12–15.[4] The judicial determination of mental incapacity that is the predicate for the firearms disability challenged here is

---

[3] *See United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) ("Courts often limit the scope of their holdings, and such limitations are integral to those holdings."); *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc) ("[W]e do take from *Heller* the message that exclusions need not mirror limits that were on the books in 1791. This is the sort of message that, whether or not technically dictum, a court of appeals must respect, given the Supreme Court's entitlement to speak through its opinions as well as through its technical holdings."); *United States v. Marlow*, 278 F.3d 581, 588 n.7 (6th Cir. 2002) ("Appellate courts . . . are obligated to follow Supreme Court *dicta*, particularly when there is no substantial reason for disregarding it, such as age or subsequent statements undermining its rationale.").

[4] Federal regulations require that to be prohibited from possessing a firearm, a person must be "[c]ommitted to a mental institution" through a "formal commitment . . . by a court, board, commission, or other lawful authority" and the commitment must be involuntary. 27 C.F.R. § 478.11.

made with all the protections of due process and is the best constitutional means of prohibiting mentally unstable persons from possessing firearms. *See United States v. Rehlander*, 666 F.3d 45, 50 (1st Cir. 2012) (observing that "a free floating prohibition" on firearms possession by the mentally ill "would be very hard to administer," which "is why, as with the ban on prior felons, Congress sought to piggyback on determinations made in *prior judicial proceedings* to establish status.").

## II. EVEN IF THE CHALLENGED LAW IS WITHIN THE SCOPE OF THE SECOND AMENDMENT, INTERMEDIATE SCRUTINY SHOULD APPLY.

If the Court determines that some form of heightened scrutiny should apply in this case, intermediate scrutiny is the appropriate level of review. The panel reached a different conclusion only because it found it necessary to select a single level of review for all Second Amendment challenges—an approach no other circuit court has taken—and then based its choice of strict scrutiny on a flawed analysis of general constitutional principles. Unlike other circuit courts that have addressed the question of the level of scrutiny to be used in the Second Amendment context, the panel did not evaluate either how closely the challenged law comes to regulating the core Second Amendment right—the "right of law-abiding, *responsible* citizens to use arms in defense of hearth and home," *Heller*,

554 U.S. at 635 (emphasis added), or the severity of the burden imposed by the challenged law.

> A. For Cases Falling Within the Scope of the Second Amendment, the Sliding Scale Analysis Employed by Other Circuits Is the Best Approach for Determining the Level of Scrutiny.

Rather than the blanket approach taken by the panel, a more appropriate framework for determining the level of review in Second Amendment cases recognizes the distinction between the Second Amendment's core and residual protections and between laws that impose modest and severe burdens. The Fourth, Fifth, Seventh, and Ninth Circuits have expressly adopted a sliding scale framework to determine the level of scrutiny in a Second Amendment challenge which considers: (1) "how close the law comes to the core of the Second Amendment right," and (2) "the severity of the law's burden on the right." *See, e.g., United States v. Chester*, 628 F.3d 673, 682–83 (4th Cir. 2010); *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011).

This approach is grounded in principles found in other areas of constitutional law. As the Ninth Circuit has explained, "just as in the First Amendment context, the level of scrutiny in the Second Amendment context should depend on 'the nature of the conduct being regulated and the degree to which the challenged law burdens the right.'" *United States v. Chovan*, 735 F.3d 1127, 1138 (9th Cir. 2013). This "prevailing view" among the circuits offers a sound analytic framework for

evaluating challenges to firearms prohibitions like § 922(g)(4). *NRA v. ATF*, 700 F.3d at 195 ("We agree with the prevailing view that the appropriate level of scrutiny 'depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right.'").

### 1. The Approach Taken by the Ninth Circuit in *Chovan* Provides a Sound Model For Deciding This Case.

The Ninth Circuit's application of the prevailing two-step inquiry in *Chovan* provides a useful model for determining the appropriate level of scrutiny in this case.[5] In *Chovan*, the court evaluated a challenge to a federal firearm prohibition that arose from a 17-year-old domestic violence misdemeanor conviction. 735 F.3d at 1130. In the first step of its analysis, the court evaluated how close the challenged law came to regulating the core Second Amendment right. *Id.* at 1138. The court determined that the claim was "not within the core right identified in *Heller*—the right of a *law-abiding, responsible* citizen to possess and carry a weapon for self-defense—by virtue of [Chovan]'s criminal history as a domestic violence misdemeanant." *Id.* (emphasis in original) (*quoting Chester*, 628 F.3d at 682–83). In the second step of the inquiry, the court noted that the burden placed on individuals by a permanent firearms prohibition was "quite substantial." *Id.*

---

[5] The panel majority in this case also cited *Peruta v. San Diego County*, 742 F.3d 1144 (9th Cir. 2014), *reh'g en banc granted, opinion vacated* (Mar. 26, 2015) as Ninth Circuit precedent, but that decision was vacated and the case was reheard en banc on June 16, 2015.

9

But because Chovan's prior conduct placed him outside of the core protection of the Second Amendment, the court determined that "intermediate rather than strict scrutiny is the proper standard to apply" to his facial and as-applied challenges. *Id.*

As *Chovan* suggests, the proper approach in determining the level of scrutiny is to examine the challenger's prior conduct and determine whether he or she falls within the class of "law-abiding, responsible" individuals entitled to the core protection of the Second Amendment. *Heller*, 554 U.S. at 635. If the challenger is not among this group, then intermediate scrutiny is the proper level of scrutiny that should govern the challenge.

### 2. Tyler's Involuntary Commitment to a Mental Institution Placed Him Outside the Core Protection of the Second Amendment.

Persons involuntarily committed to a mental institution have been found by clear and convincing evidence to pose an imminent danger to themselves and/or the public due to a lack of mental stability. *See Addington v. Texas*, 441 U.S. 418, 433 (1979) (holding that due process requires clear and convincing proof of dangerousness at civil commitment proceedings). Such individuals pose a greater risk of engaging in dangerous or harmful behavior in the future, and, in particular,

are more likely to attempt suicide.⁶ Data from the CDC's National Violent Death Reporting System, for example, shows that a substantial proportion of suicide victims (up to 33%) have a documented history of some psychiatric treatment before their fatal attempt.⁷

There is also evidence that keeping firearms out of the hands of previously institutionalized persons is associated with a reduction in violent crime committed by this group. For example, when Connecticut began reporting records of mental health adjudications to the federal NICS database in 2007—thereby preventing individuals with prior civil commitments, but no previously disqualifying criminal history, from passing a background check to purchase a firearm—the state saw a 53% reduction in rates of violent crime perpetrated by such individuals.⁸

Individuals who have broken from reality to the extent that an involuntary civil commitment is necessary for their own safety or for the public's protection, are not—as a class—the responsible individuals protected by the core Second

---

⁶ The Supreme Court has held that the State has an "unquestionably important and legitimate" interest in prophylactically preventing suicide. *Washington v. Glucksberg*, 521 U.S. 702, 735 (1997).

⁷ J.W. Swanson et al., *Mental Illness and Reduction of Gun Violence and Suicide: Bringing Epidemiologic Research to Policy*, 25 ANNALS OF EPIDEMIOLOGY 336 (2014), http://dx.doi.org/10.1016/j.annepidem.2014.03.004.

⁸ J.W. Swanson et al., *Preventing Gun Violence Involving People with Serious Mental Illness*, in REDUCING GUN VIOLENCE IN AMERICA: INFORMING POLICY WITH EVIDENCE AND ANALYSIS 33-51 (Daniel W. Webster & John S. Vernick eds., 2013).

Amendment right. The prior conduct of such individuals places them outside the core protection of the Second Amendment and makes intermediate scrutiny the appropriate level of review.

### B. Strict Scrutiny is Incompatible with the Supreme Court's View that Firearms Prohibitions on the Mentally Ill Are Presumptively Lawful.

Assuming that some level of heightened scrutiny is appropriate in Second Amendment challenges by previously institutionalized persons, the application of intermediate scrutiny in this case is consistent with the Supreme Court's express statements in *Heller* and *McDonald* that certain categories of individuals may be "disqualified from the exercise" of the core Second Amendment right, *Heller*, 554 U.S. at 627 n.26, and that firearms prohibitions on the mentally ill are presumptively lawful. *Id.* at 635; *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010); *see also Skoien*, 614 F.3d at 639 ("The reference to being 'disqualified' relates to prior convictions and mental illness."). The application of strict scrutiny is incompatible with those statements.

Inherent in the Supreme Court's Second Amendment jurisprudence is the principle that legislators may use individuals' prior history of criminal or irresponsible behavior as a legitimate, if necessarily imperfect, means of identifying categories of individuals at heightened risk of criminal, suicidal, and otherwise dangerous use of deadly weapons. In other words, "[s]ome categorical

[firearms] disqualifications are permissible: Congress is not limited to case-by-case exclusions of persons who have been shown to be untrustworthy with weapons, nor need these limits be established by evidence presented in court." *Chovan*, 735 F.3d at 1142 (*quoting Skoien*, 614 F.3d at 641).

## CONCLUSION

Tyler's as-applied challenge falls outside the scope of the Second Amendment or, at most, should be reviewed under intermediate scrutiny. In either event, this Court should affirm the judgment of the district court.

DATED: September 17, 2015

s/ *Daniel B. Asimow*
DANIEL B. ASIMOW
DANIEL M. PASTOR
ARNOLD & PORTER LLP
Three Embarcadero Center
San Francisco, CA 94111-4024

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

As counsel for *amicus curiae*, I certify pursuant to Federal Rule of Appellate Procedure 32(a)(7)(c) that the foregoing brief is in 14-point, proportionately spaced Times New Roman font. According to the word processing software used to prepare this brief (Microsoft Word), the word count of the brief is exactly 2,968 words, excluding the cover, corporate disclosure statement, table of contents, table of authorities, certificate of service, and this certificate of compliance.

s/ *Daniel B. Asimow*
DANIEL B. ASIMOW

Counsel for *Amicus Curiae*

# CERTIFICATE OF SERVICE

As counsel for *amicus curiae*, I hereby certify that on this seventeenth day of September, 2015, I filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Sixth Circuit via electronic mail. The Clerk of the Court will provide service to all registered attorneys participating in the case.

s/ *Daniel B. Asimow*
DANIEL B. ASIMOW

Counsel for *Amicus Curiae*